**Cornelia CRENSHAW,
Plaintiff–Appellant,**

v.

**Honorable Ray BLANTON, Governor of
Tennessee, and Gentry Crowell,
Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section.

March 28, 1980.

Certiorari Denied May 19, 1980.
Appeal Dismissed Oct. 20, 1980.
See 101 S.Ct. 310.

---

1. Letter from Chief of Police to plaintiff received February 21, 1977.

**286**

Hubert Patty, Maryville, for plaintiff–appellant.

Everett Falk, Deputy Atty. Gen., William W. Hunt, III, Asst. Atty. Gen., Nashville, for defendants appellees.

## ABRIDGED OPINION

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

TODD, Judge.

The plaintiff, Cornelia Crenshaw, has appealed from the Chancellor's decree dismissing her suit challenging the validity of Chapter 848, Public Acts of 1976, being the action of the General Assembly providing for a referendum upon the calling of a constitutional convention.

The immediate precipitating cause of the dismissal was plaintiff's failure to properly respond to defendant's demand and the Chancellor's order for discovery. Appellant makes no question of the final action of the Chancellor, but asserts as error the previous action of Chancellor in overruling plaintiff's motion for summary judgment. That is to say, plaintiff insists that the Chancellor should have granted summary judgment in her favor and that, had he done so, there would have been no occasion for the subsequent dismissal.

Plaintiff's original pleading, filed on March 15, 1978, was entitled, "Complaint to Contest Election", and sought an injunction to restrain the Governor from issuing a proclamation of the results of an election held on March 7, 1978, to ratify certain constitutional amendments proposed by the Limited Constitutional Convention of 1977. The grounds of the complaint were:

1. Failure of the Governor to sign the legislation *authorizing the call of the convention.*

2. Illegal acts of the convention.

3. Illegalities in the election.

On April 17, 1978, plaintiff was permitted to amend her complaint to allege that the Speakers of the House and the Senate failed to sign the bill *authorizing the convention* in the manner provided by the constitution.

Contrary to the statements in the complaint, above, and of plaintiff's motion, below, Chapter 848, Public Acts of 1976, did *not* authorize a constitutional convention. It merely authorized a public referendum to see whether the voters favored a convention.

All grounds alleged in the complaint and amendment were denied in the answer.

On May 12, 1978, plaintiff filed the following motion:

In this cause comes the plaintiff and moves the Court for summary judgment in this cause and all of the relief sought in the Complaint upon the following grounds:

The basis for the Limited Constitutional Convention of 1977, and its resulting action therefrom depended upon the validity of the *Public Acts of 1976, Chapter 848.*

That Act is void inasmuch as it was not signed or approved by the Governor of Tennessee, which is required by the Constitution of Tennessee, nor properly signed by the Speakers of the House and Senate.

"*Bill approved by the Governor.* Every Bill which may pass both Houses of the General Assembly shall, before it becomes a law, be presented to the Governor for his signature."

"Every joint resolution or order (except on questions of adjournment and proposals of specific amendments to the Constitution) shall likewise be presented to the Governor for his signature." *Tenn.Const. Art., Sec. 18 [Art. 2, Sec. 18]*

"No Bill shall become a law, until it shall have been read and passed, . . . and shall have been signed by the respective speaker in open session, the fact of such signing to be noted on the Journal; and shall have received the approval of the Governor, or shall have been otherwise passed under the provisions of this constitution." *Tenn.Const. Art. 2, Sec. 18*

All other Acts calling for Constitutional Conventions have been signed by the Governor.

"Every Bill, joint resolution, or order, except on questions of adjournment and proposals of specific amendments to the Constitution, shall after the same has been passed, enrolled, and signed by the speakers of both Houses of the General Assembly, be presented by the Committee on enrolled Bills of that House wherein such Bill, joint resolution or order originated to the Governor for his signature." *T.C.A. 3–203*

"*Approval of Governor.* If the Governor approved the bill, joint resolution, or order, he shall write upon the same, to the left of and below the signature of the speaker of the Houses, the two fact and date of his approval, as follows: 'Approved _____, 19_____,' and shall sign the same as follows: '_____, Governor.'" *T.C.A. 3–203*

The attached certificate of the Secretary of State, the affidavits of the speakers of the House and Senate indicate that the governor did not sign nor in any manner approve Chapter 848, of the Public Acts of 1976, or that the speakers properly signed said act.

No affidavit of the Speaker of the House is found in the record. On June 23, 1978, a certificate of the Secretary of State was filed, contents of which will be hereafter discussed in detail. An affidavit of the Speaker of the Senate was filed on July 5, 1978, as follows:

I, John S. Wilder, being duly sworn according to law, depose and say:

1. That he is the duly elected Speaker of the Senate of the Ninetieth General Assembly.

2. That several bills passed the Senate on the last day of the Session one of which being House Bill 290.

3. That it is not known exactly when House Bill 290 was signed, but as a practical matter it would have been impossible for that bill to have been engrossed prior to the adjournment; therefore, it is verily believed that House Bill 290 was signed after the Ninetieth General Assembly adjourned sine die.

The affidavit of the Speaker of the Senate, above, does *not* assert that the enactment was not signed by him in accordance with the constitutional requirement, but that "it is not known when . . . as a practical matter it would have been impossible . . . it is verily believed that House Bill 290 was signed after the Ninetieth General Assembly adjourned sine die." This is convincing, but not conclusive evidence of the tardy signing of the bill.

The Legislative Journals record the proper signing of the bill.

▆ In this state of the record, the Chancellor was certainly justified in ruling that there was an issue of fact as to the time when the bill was signed in the Senate, and this Court concurs in his ruling.

The certificate of the Secretary of State, referred to above, is, in some respects, a curious document. The certificate itself, is in the usual form, attesting that

"the annexed is a true copy of Public Chapter 848 of the Public Acts of 1976 (House Bill 290, Senate Bill 388) the original of which is now on file and a matter of record in this office."

The first six pages attached to the certificate purport to be photostatic copies of pages from the published reports of the Public Acts of the General Assembly. However, on the first page in the margin is printed with pen and ink the following:

"This Bill was enacted pursuant to Article II, Section 3 of the Constitution, and does not require the approval of the Governor."

On the sixth page of the attachment, the text of the act ends abruptly at the conclusion of Section 12, without any date of enactment or signatures, as is usual in the preparation, printing and publication of legislative acts. The seventh page of the attachment consists simply of a typed repetition of the quotation above of the marginal note on the first page. The eighth page of the attachment consists of a letter from Robert H. Roberts, "Advocate General", on the letterhead of the Attorney General of Tennessee.

The ninth page consists of a letter from the Chief Engrossing Clerk of the House of Representatives to the Secretary of State instructing that House Bill 290 be filed without referring same to the Governor for action.

The tenth page of the attachment purports to be another letter from the same Robert H. Roberts on the letterhead of the Attorney General of Tennessee advising that *a call for a constitutional convention* need not be referred to the Governor.

The eleventh page of the attachment contains the following:

"HOUSE BILL NO. 290
PASSED: March 19, 1976

/s/ Ned R. McWherter
SPEAKER OF THE HOUSE OF REPRESENTATIVES

/s/ John S. Wilder
SPEAKER OF THE SENATE

APPROVED this _____ day of _____ 19___

GOVERNOR"

▆▆ Without commenting upon the obvious irregularity of the form of the document attached to the certificate of the Secretary of State, it is sufficient to state that it is not evidence of such regularity and conclusiveness as to justify a Chancellor or this Court in setting aside, not only the actions of the elected representatives of the people in the General Assembly, but also the actions of a duly elected constitutional convention and the subsequent approval of the people themselves. This Court takes judicial notice that the original engrossment of all legislative acts are deposited with the Secretary of State. The best evidence upon so delicate and important question as to the existence of a signature thereon would be a certified photostatic copy of the original, uninterrupted by insertion of letters and unaltered by marginal notations. This fact alone was enough to

give pause to the Chancellor and justify him in waiting for more satisfactory evidence of the true facts.

This Court concurs in the ruling of the Chancellor that a summary judgment should not be granted on the basis of the certificate of the Secretary of State in the form described.

■ T.C.A. § 2–1702 requires that election contests be tried within fifty (50) days after the filing of the complaint. Plaintiff's motion for summary judgment was not filed until May 12, 1978, more than fifty (50) days after the filing of the complaint on March 15, 1978. Even after the motion was filed, there is no evidence in the record that plaintiff made an effort to obtain an expedited hearing. This Court would be reluctant to deny relief because a court was unable to try and decide an election contest within fifty (50) days. However, if the plaintiff in such a case does not do his best to obtain a timely decision, then a denial of relief is in order under the statute.

If this Court and the Chancellor should be in error as to the existence of issues of fact, the plaintiff was nevertheless not entitled to a summary judgment because of the delay.

Article II, Section 18, Constitution of Tennessee, reads in pertinent part as follows:

> ... No bill shall become a *law* until it ... shall have received the approval of the Governor, or shall have been otherwise passed under the provisions of this constitution. (Emphasis supplied)

Article III, Section 18, Constitution of Tennessee, reads in pertinent part as follows:

> ... Every Bill which may pass both Houses of the General Assembly shall, before it becomes a *law*, be presented to the Governor for his signature.... 
> Every joint resolution or order (except on question of adjournment and *proposals of specific amendments* to the Constitution) shall likewise be presented to the Governor for his signature, ... (Emphasis supplied)

Article XI, Section 3, Constitution of Tennessee, reads in pertinent part as follows:

> ... Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, ... and referred to the general assembly then next to be chosen; ... and if in the general assembly then.next chosen as aforesaid, such proposed amendment or amendments shall be agreed to by *two thirds* of all the members elected to each house, then it shall be the duty of the general assembly to submit such proposed amendment or .amendments to the people at the next general election in which a Governor is to be chosen ....
> The Legislature shall have the right *by law* to submit to the people, at any general election, the question of calling a convention to alter, reform, or abolish this Constitution, or to alter, reform or abolish any specified part or parts of it; ....
> (Emphasis supplied)

■ The Constitution does require the signature of the Governor on a measure submitting to the voters the question of calling a constitutional convention, even a limited constitutional convention such as that involved in the present suit.

Article XI, above, provides that the legislature may *by law* submit a proposal for a constitutional convention. Articles II and III, above, require that every bill shall be presented to the Governor *before it becomes a law*. Therefore, before the action of the legislature in the present case could become a *law*, it was necessary that it be submitted to the Governor. Not having been so submitted, it could not become a *law*, and the action of the legislature, not being accomplished *by law*, was not taken in compliance with the constitution.

Article III, Section 18, quoted above, provides that all other actions of the legislature (joint resolutions or orders) shall be presented to the Governor, except on question of adjournment and *proposals of specif-*

ic amendments to the Constitution. The submission to the voters of a proposal for a limited constitutional convention is not contemplated by the exemption just mentioned. In the first place, the proposal of a convention was not a proposal of *specific* areas. In the second place, Article XI, quoted above, specifies two separate and distinct methods of amending the constitution, viz:

1. *Proposals* by two successive legislatures of *specific amendments* directly to the voters without a convention. Such proposal is *not* required to be made *by law*, but by a (simple) majority of the respective houses "agreeing" to a proposal followed by agreement of *two thirds majority* of each house of the next legislature. Such action is exempt from the requirement of submission to the Governor.

2. Submission to the voters of the *question* of calling a convention is to be accomplished *by law* at a single session of the legislature without any requirement for two thirds approval of a subsequent legislature.

It is thus seen that the framers of the Constitution were willing to allow the Legislature to submit proposals for specific amendments to the voters without concurrence of the Governor under the unusual requirements of action by successive legislatures and two thirds majority vote by the second legislature. For this reason, the specific amendment proposal was exempted from the general requirement of Article III that "Every joint resolution or order . . . be presented to the Governor for presentation." No such exemption is intended for a single majority action of the Legislature authorizing a referendum.

The legislative action involved in the present case should have been presented to the Governor as required by Article III.

■ An entirely different issue is whether such omission, if it occurred, would invalidate the first action of the voters, approving the convention, the action of the convention elected by the voters and the final action of the voters in approving the results of the convention. Even if the evidence should show conclusively (as required for a summary judgment) that the action was not presented to the Governor, this Court is unwilling at this late date to invalidate the amendments to the Constitution which have been proposed by a convention called upon approval of the voters of the State who also have given final approval to the amendments. Judicial interference with the orderly framework of government as approved by the voters of the State is simply not justified by an omission which cannot be said to have interfered with the free exercise of the rights of the people of the State to change the form of their government. Article I, Section 1, Constitution of Tennessee. *Snow v. City of Memphis*, Tenn.1975, 527 S.W.2d 55, and authorities cited therein.

The decree of the Chancellor is affirmed.

DROWOTA and BLACKBURN, JJ., concur.