# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 6, 2006 Session

## DIANE JORDAN, ET AL. v. KNOX COUNTY, TENNESSEE, ET AL.

### Direct Appeal from the Chancery Court for Knox County
### No. 166799-1    John F. Weaver, Chancellor

---

### No. E2006-01377-SC-RDM-CV - Filed on January 12, 2007

---

In this expedited appeal, the primary issue presented for review is whether Knox County, Tennessee, has a valid governmental charter. A secondary issue is whether a term limits amendment to the county charter should be applied and, if so, to which of the elected county officials. We hold that while Knox County failed to comply with the enabling legislation for instituting a charter form of government, since September 1, 1990, Knox County has been governed under a de facto charter with a county mayor, county commissioners, and other de facto officers. For the reasons set out in this opinion, it is our conclusion that the term limits amendment meets due process guidelines and applies to all elected Knox County Government officials except for the court clerks and the school board member, each of whom is protected by either the state constitution or statute. The judgment of the Knox County Chancery Court, which invalidated both the charter and the amendment, is therefore affirmed in part and reversed in part.

### Tenn. Code Ann. § 16-3-201(d); Judgment of the Chancery Court Affirmed in Part and Reversed in Part.

GARY R. WADE, J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., JANICE M. HOLDER and CORNELIA A. CLARK, JJ., and E. RILEY ANDERSON, SP. J., joined.

John E. Owings, Law Director, and Mary Ann Stackhouse, Deputy Law Director, Knoxville, Tennessee, for appellant, Knox County, Tennessee.

L. Caesar Stair, III, Thomas N. McAdams, and Herbert S. Moncier, Knoxville, Tennessee, for appellant, John Schmid (County Commissioner).

John P. Valliant, Jr., Arthur G. Seymour, Jr., and Matthew A. Grossman, Knoxville, Tennessee, for appellees, John R. Mills (County Commissioner), Larry Clark (County Commissioner), Billy Tindell (County Commissioner), David Collins (County Commissioner), Diane Jordan (County Commissioner), John Griess (County Commissioner), Phil Guthe (County Commissioner) and Sam Anderson (Board of Education).

James L. Murphy, III and Austin L. McMullen, Nashville, Tennessee, for appellee, Knox County Election Commission.

Paul G. Summers, Attorney General & Reporter; Michael Moore, Solicitor General; Janet Kleinfelter, Assistant Attorney General, for appellee, Brook Thompson, State Administrator of Elections.

Gregory D. Shanks, Knoxville, Tennessee, for appellee, Catherine A. Quist (Circuit and General Sessions Court Clerk).

Albert J. Harb, Dean B. Farmer, and Matthew A. Birdwell, Knoxville, Tennessee, for appellee, Mike Lowe (Trustee).

Ralph E. Harwell and Tracy Jackson Smith, Knoxville, Tennessee, for appellee, Martha Phillips (Criminal and Domestic Relations Court Clerk).

Jon G. Roach, Knoxville, Tennessee, for appellee, William Mike Padgett (County Clerk).

Michael S. Ruble and Robert H. Watson, Jr., Knoxville, Tennessee, for appellee, Timothy Hutchison (Sheriff).

Steven G. Shope, Knoxville, Tennessee, for appellee, Steve Hall (Register of Deeds).

Brian L. Kuhn, County Attorney, Christy L. Kinard, Assistant County Attorney, and John L. Ryder, Memphis, Tennessee, for Amicus Curiae, Shelby.

Frierson M. Graves, Jr. and Michael F. Pleasants, Memphis, Tennessee, for Amicus Curiae, Richland.

## OPINION

### I.  Factual Background

### A.  Knox County Charter

On July 15, 1988, the Knox County Charter Commission ("Charter Commission") was initiated by proclamation of then-County Executive Dwight Kessel, pursuant to the enabling legislation at Tennessee Code Annotated sections 5-1-201 to -215 (2005).[1]  App., exh. D.  The Charter Commission was charged with the responsibility of establishing an alternative charter form of local government for consideration by the voters of the county.  See Tenn. Code Ann. § 5-1-

---

[1]The current version of these provisions is substantively the same as what was in effect at all times relevant to this case.

204(c)(3) (1988). Three days later, the proclamation was ratified by a two-thirds vote of all members of the county legislative body. Knox County Comm'n Res. 88/7/D (July 18, 1988); App., exh. D. Under the proposed charter form of government, Knox County would gain the authority to pass ordinances applicable to its locality without having to solicit the approval of the state legislature. Under the proposed form, the only restrictions were that these ordinances "shall not be opposed to the general laws [of the state] and shall not interfere with the local affairs of any municipality" within the Knox County boundaries. S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 713 (Tenn. 2001).

The Charter Commission held a series of open meetings and considered comments from the public in an effort to develop a governmental structure worthy of approval. The Shelby County Charter was used as a model. The county attorney from that jurisdiction met with the Charter Commission and provided his perspective of the requisite charter content, the political aspects of the referendum, and the experiences of Shelby County under its new form of government. Pursuant to the terms of Tennessee Code Annotated section 5-1-208(a), the Charter Commission prepared and filed its proposal less than nine months after the date of its initial meeting.

The proposed Knox County Charter established the offices of the county executive, now county mayor,[2] the county commission, and a law director (a county office not otherwise recognized in our state constitution). By its terms, article II established the Legislative Branch. The offices of county executive and law director were identified by article III as the Executive Branch. This latter article also made reference to the office of sheriff but did not specifically enumerate the functions of the office. The proposed charter contained only passing references to other state constitutional officers that had existed under the prior form of county government. Its provisions neither expressly established the offices of sheriff, trustee, register of deeds, county clerk, or property assessor, nor explicitly assigned the duties and functions traditionally performed by those officials to any other administrative or executive officers. As the minutes of the Charter Commission reflect, the members made every effort to avoid addressing controversial issues that might have stirred opposition to their proposal. The record of their deliberations clearly demonstrates that the commission members labored under the premise that they lacked the power to alter or abolish those traditional county offices identified by our state constitution. Minutes of the Knox County Home Rule Charter Commission (Aug. 2, 1988; Aug. 16, 1988; Aug. 24, 1988).

James R. Carroll, Jr., the chairman of the Charter Commission, certified and filed copies of the proposed charter with both the county clerk and the Knox County Election Commission. Tenn. Code Ann. § 5-1-208(b). A referendum was held on November 8, 1988. The ballot question submitted to the voters provided as follows:

Shall Knox County Government be changed from its current form to a Home Rule
Charter Government consisting of an Executive Branch headed by the Executive of

---

[2]In 2003, the General Assembly directed the Code Commission to change all references from "county executive" to "county mayor." 2003 Tenn. Pub. Acts 160-61.

Knox County, a Legislative Branch consisting of the Commission of Knox County and a Judicial Branch consisting of the Existing Courts of Knox County, or any other courts established by law?

For           _____

Against        _____

Home Rule Charter Referendum, Knox County General Election Ballot (Nov. 8, 1988) (App., exh. F); see also Charter of Knox County, Tennessee, art. IX, § 9.08. The charter was ratified with 60,479 votes in favor of amendment and 24,938 votes against amendment. Although required by statute, neither the returns of the referendum nor a copy of the charter was certified by the Knox County Election Commission to the Secretary of State. See Tenn. Code Ann. §§ 5-1-209(e)(1) - (2). In consequence, the Secretary of State did not issue a proclamation confirming the results of the referendum. Id., § 5-1-209(e)(2). Because there was no proclamation from the Secretary of State, the Knox County Clerk was unable to attach a copy to the charter on file in his Knoxville office. Id. Despite these procedural deficiencies, the county executive and the county commission exercised governance under the new charter beginning September 1, 1990. Since that date, elections for those offices have been held at regular intervals. Even though the offices of sheriff, trustee, register of deeds, county clerk, and property assessor were not expressly established by the terms of the newly approved charter, individuals were elected to those positions in the usual manner and have, in fact, performed the traditional duties of their respective offices since September 1, 1990.

### B.  Knox County Referendum on Term Limits

Over three years later, in January of 1994, the Knox County Commission considered but tabled an ordinance proposing to amend the charter by establishing term limits for the county commissioners but not otherwise affecting the county executive, the law director, or any other elected offices. It was in that context that later in the year, the requisite number of qualified Knox County voters petitioned for a term limits amendment to the charter, the relevant language of which declared as follows:

> The undersigned registered voters of Knox County, pursuant to Knox County Charter section 8.05(C), petition that the following amendment to the Knox County charter be placed before the voters of Knox County for approval by referendum. The undersigned seek the following amendment to the Knox County Charter.
>
> "Knox County Charter Article 8 is amended by adding a new section 8.17
>
> Section 8.17 Term Limits.
>
> A.  Effective January 1, 1995, no person shall be eligible to serve in any elected office of Knox County if during the previous 2 terms of

4

that office, the person in question has served more than a single term. Service prior to the passage of this measure shall not count in determining length of service. Judges are exempt from this provision.

B.  In January prior to each state legislative session until such a time that it can be certified that the legislative term limits described in this clause have been enacted, the clerk shall write all state legislators whose districts include any part of Knox County stating that the people of Knox County desire an opportunity to vote on legislative term limits.  The people of Knox County respectfully request that a proposed constitutional amendment limit each Representative to six years (three terms) in the Tennessee House of Representatives and eight years (two terms) in the Tennessee Senate.  The people of Knox County also instruct all state legislators representing any part of Knox County to pass this proposed constitutional amendment and place it on the general election ballot.

C.  In January of each year until such a time that it can be certified that the term limits described in this clause have been enacted, the clerk of Knox County shall write all U.S. Representatives whose districts include any part of Knox County's limits and both federal Senators stating that the people of this municipality support term limits for the U.S. Congress.  The people of Knox County respectfully request that a proposed federal constitutional amendment limit each Representative to six years (three terms) in the United States House of Representatives and twelve years (two terms) in the United States Senate.  The people of this municipality also instruct their federal delegation to pass a constitutional amendment imposing these limits and submit it to the states for ratification.

D.  If any provision of this petition shall be held unconstitutional, invalid or inapplicable to any persons or circumstances, then it is intended and declared by the people of the County that all other provisions of this petition and their application to all other persons and circumstances shall be severable and shall not be affected by such decision."

Term Limits Petition (App., exh. I); see also Charter of Knox County, Tennessee, art. VIII, § 8.17 (emphasis added).  Under article VIII, section 8.05(C) of the new charter, Knox County voters are entitled to frame and propose amendments by petition.  By the terms of this law, any such proposals must be filed with the county clerk and signed by 15 percent of the number of Knox County voters in the most recent gubernatorial election.  The charter's provisions require that a petition include the same information necessary for any ordinance adopted by the county commission which would offer any charter amendment.  If the election commission determines that the petition meets all legal

5

criteria, the amendment is then submitted for vote.

The substance of the term limits proposal was more than 300 words. When a proffered amendment exceeds that length, Tennessee Code Annotated section 2-5-208(f)(2), requires, for ballot purposes, a "brief summary . . . written in a clear and coherent manner using words with common everyday meanings" in less than 200 words. The statute authorizes the county attorney (law director) to summarize the question presented to the voters. Then-Deputy County Law Director Richard Beeler prepared a summary of the proposed amendment for the referendum held in November of 1994:

> SHALL THE KNOX COUNTY CHARTER BE AMENDED TO PROVIDE THAT AFTER JANUARY 1, 1995, NO INDIVIDUAL SHALL BE PERMITTED TO HOLD THE <u>SAME ELECTED OFFICE OF KNOX COUNTY GOVERNMENT</u> MORE THAN TWO (2) CONSECUTIVE TERMS; TO DIRECT THE KNOX COUNTY CLERK TO ADVISE ALL STATE LEGISLATORS REPRESENTING ANY PART OF KNOX COUNTY THAT THE <u>PEOPLE OF KNOX COUNTY DESIRE AN OPPORTUNITY TO VOTE ON THE TERM LIMITS OF THE STATE LEGISLATORS</u> AND REQUEST THAT AN AMENDMENT TO THE TENNESSEE CONSTITUTION BE PROPOSED LIMITING STATE REPRESENTATIVES TO NO MORE THAN THREE (3) TERMS AND STATE SENATORS TO NO MORE THAN TWO (2) TERMS; THAT THE CLERK OF KNOX COUNTY ALSO ADVISE ALL UNITED STATES REPRESENTATIVES AND SENATORS REPRESENTING KNOX COUNTY THAT THE <u>PEOPLE OF KNOX COUNTY SUPPORT TERM LIMITS FOR REPRESENTATIVES AND SENATORS IN THE UNITED STATES CONGRESS</u>, AND THAT THEY REQUEST THAT AN AMENDMENT TO THE UNITED STATES CONSTITUTION BE PROPOSED LIMITING MEMBERS OF THE UNITED STATES HOUSE OF REPRESENTATIVES TO THREE (3) TERMS AND UNITED STATES SENATORS TO TWO (2) TERMS; AND THAT IF ANY PART OF THIS AMENDMENT IS HELD INVALID FOR ANY REASON THAT THE REMAINING PARTS OF THE AMENDMENT SHALL NOT BE AFFECTED BY SUCH DECISION.

Knox County Charter Referendum, Knox County General Election Ballot (Nov. 8, 1994) (App., exh. J)(emphasis added). No reference was made to the exemption of judges.

There were 57,795 votes in favor of the proposal and only 18,900 against. The 1994 amendment, however, was not published as a part of the Knox County Code until 2005. At the time of publication, the top portion of a photostatic copy of the petition was made a part of the Knox County Charter. The specific language of the charter, "no person shall be eligible to serve in any elected office of Knox County . . . ," is that used in the petition rather than the terminology appearing on the ballot. A severability clause appears in the chapter version as a potential safeguard from constitutional challenge. Charter of Knox County, Tennessee, art. VIII, § 8.17. In the meantime, an opinion of the Tennessee Attorney General called into question whether a county could

6

constitutionally impose term limits on its elected officials. Tenn. Op. Att'y Gen. No. 95-007, 1995 WL 69246 at *1(Feb. 15, 1995) ("Neither the legislature nor a charter county has the power to limit the number of terms for the county officials enumerated in Article VII, § 1 of the Tennessee Constitution."). There was no definitive ruling on the issue, however, and until the 2006 election, the Knox County Election Commission had not considered the application of the term limits provision to any candidate otherwise qualified to hold a county office.

As of February 16, 2006, the qualifying deadline for elective offices in Knox County, the Tennessee Court of Appeals had ruled in Bailey v. County of Shelby, No. W2005-01508-COA-R3-CV, 2005 WL 3115915 (Tenn. Ct. App., Nov. 22, 2005) perm. to app. granted (Feb. 21, 2006), that article VII, section 1 of the Tennessee Constitution prohibited Shelby County, an alternate form county with the very charter used as a model for that adopted in Knox County, from imposing term limits on its commissioners. 2005 WL 3115915 at *14. The Court of Appeals, relying on published opinions decided prior to our state's Limited Constitutional Convention in 1977, rejected altogether the application of charter-imposed term limits to the county's constitutional officers. Id. In contrast to the broadly applicable Knox County amendment, the term limits provision of the Shelby County Charter addressed only the offices of county mayor and the county commissioners:

> No County Mayor nor any member of the Board of County Commissioners shall be eligible to be elected to or hold the office of County Mayor or County Commissioner for more than two consecutive four-year-terms. Provided, however, if an individual is appointed to fill an unfilled term either for Mayor or County Commissioner, this term shall not be counted as part of the two consecutive elected terms.

Shelby County Charter, art. II, § 2.03(G) (emphasis added). On March 29, 2006, however, well after the qualifying deadline in Knox County, this Court, in a unanimous opinion, reversed the Court of Appeals, ruling that term limits for a charter county's legislative body did not violate the state constitution. Bailey v. County of Shelby, 188 S.W.3d 539, 544 (Tenn. 2006).

## C. Lawsuit in Knox County Chancery Court

On April 19, 2006, approximately one year after the codification of the term limits amendment and only days after our opinion in Bailey, Diane Jordan, David Collins, Billy Tindell, Phil Guthe, and John Griess (collectively referred to as "the Plaintiffs"), all incumbent county commissioners whose eligibility to serve depended upon the validity of the charter's 1994 term limits amendment, filed an action for declaratory judgment in the Knox County Chancery Court against Knox County, Tennessee, the Knox County Election Commission, and Brook Thompson, State of Tennessee Administrator of Elections (collectively referred to as "the Defendants"). It is their contention that "Knox County did not properly adopt an alternative form or charter form of government in 1990 and that the charter is null and void," and that in consequence, "[a]s the charter is without legal force, the term-limit provisions amending the charter effective in 1995 do not affect Plaintiffs' ability to run for office." At the time of filing their complaint, the Plaintiffs also sought injunctive relief "barring any Defendant from removing their names from the August General Election, if they are properly nominated in their respective primaries."

7

The Knox County Election Commission filed a counterclaim and third-party complaint seeking a declaratory judgment as to the eligibility of the Plaintiffs as well as other candidates in the August 2006 general election. The election commission named Sheriff Timothy Hutchison, Trustee Mike Lowe, County Clerk William Mike Padgett, Register of Deeds Steve Hall, Criminal Court Clerk Martha Phillips, Circuit Court Clerk Cathy Quist, Board of Education members Sam Anderson and Diane Dozier, and County Commissioners John Schmid, Mark Cawood, Wanda Moody, Mary Lou Horner, Mike McMillan, John R. Mills, and Larry Clark as third-party Defendants. Neither Plaintiff Commissioner Collins nor Commissioners Horner, McMillan, and Moody, along with Board of Education member Dozier were re-elected to their offices. As a result, they have no personal interest in this litigation. All the other Plaintiffs and third-party Defendants received the requisite number of votes to be elected. The county mayor, who was in his first term, was not made a third-party defendant. Neither the property assessor nor the law director, who have offices extending into 2008, were joined in this action.

On May 9, 2006, third-party Defendant Schmid, a county commissioner for two full terms prior to the 2006 election, filed a cross-claim against the State Administrator of Elections and a counterclaim against the Knox County Election Commission. A day later, Knox County filed a response in opposition to the Plaintiffs' claims that the charter is invalid. Shortly thereafter, Commissioner Schmid, who had submitted a qualifying petition for a third term of office, added claims against each of the Plaintiffs and Knox County. He asserted that the charter is valid and effective; he claimed that the Knox County offices of trustee, register of deeds, county clerk, and property assessor were abolished by operation of law when the charter became effective on September 1, 1990; and he argued that the sheriff and all of the commissioners seeking a third consecutive term, including himself, were not eligible for re-election.

An expedited three-day trial ended June 2, 2006. One week later, the chancellor, relying in large measure upon our decision in Bailey, ruled that both the charter and the 1994 amendment were invalid. The pertinent part of the judgment was immediately declared final as authorized under Rule 54.02 of the Tennessee Rules of Civil Procedure. In his findings and conclusions of law, the chancellor determined that the offices of sheriff, trustee, register of deeds, county clerk, and property assessor, all required under article VII, paragraph one of the Tennessee Constitution, were not provided for under the third paragraph of article VII.[3] The chancellor concluded that even though the constitutional county offices could be abolished in the charter form of government, the duties of the offices, essential to the proper functioning of county government, simply had to be included in the organizational document. Tenn. Code Ann. §§ 5-1-203 to -215. He reasoned that if these offices were not mandated by paragraph three in article VII of the state constitution, the offices and their corresponding responsibilities were abolished when the charter as drafted took effect in 1990. The rationale for his decision was based upon Tennessee Code Annotated section 5-1-202(a), a portion of the enabling statute for the alternate form of county government, which provides as follows:

[3]In 1978, as a result of the changes proposed in the 1977 Limited Constitutional Convention, the positions of county judge and chairman of the county court became the office of county executive, now county mayor, and the title was added to the county officials identified in our state constitution. Tenn. Const. art. VII, § 1. That the office of the county executive (mayor) was adequately addressed by the Knox County Charter is not at issue.

8

> After adoption of a charter pursuant to this part, <u>no right, power, duty, obligation or function of any officer, agency or office of such county shall be retained and continued unless this part or the charter of such county expressly so provides</u>, or unless such retention and continuation be required by the Constitution of Tennessee.

<u>Id.</u> (emphasis added). The chancellor ruled, therefore, that because the Knox County Charter did not attempt to create or continue the necessary and essential governmental functions of the non-judicial constitutional county offices or otherwise assign their duties to any other office, agency, or official, the charter was incomplete, invalid, and ineffective as violative of Tennessee Code Annotated section 5-1-203(b), which requires "the creation and establishment of an alternate form of county government <u>to perform all the governmental and corporate functions previously performed by the county</u>." <u>Id.</u> (emphasis added). He further determined that because the charter was neither filed in accordance with relevant statutory procedure, <u>see</u> Tenn. Code Ann. § 5-1-209, nor in compliance with its own guidelines for implementation, Charter of Knox County, Tennessee, art. VIII, § 8.01, it had no legal significance. Finally, the chancellor observed that the 1994 term limits amendment also lacked force or effect because it was not promptly published and certified in accordance with relevant charter provisions, Charter of Knox County, Tennessee, art. VIII, § 8.05, and was not codified or published at all until 2005, eleven years after its adoption.

In an attempt to address the deficiencies identified by the chancery court, the Knox County Commission passed a resolution on June 19, 2006, establishing a Charter Review Committee.[4] So that the voters of Knox County could consider any proposed charter revisions in the November 2006 general election, the committee was directed to complete its study by August 15, 2006. In addition, Knox County asked the election commission to certify the charter to the Secretary of State in order to remedy the procedural deficiency in regard to filing.

On June 20, 2006, Knox County and Commissioner Schmid both filed motions to alter or amend the judgment and asked for a stay of the judgment. Tenn. R. Civ. P. 59.04. On June 28, 2006, the chancellor denied the request to alter or amend, but did enter a stay of the declaratory judgment for a period of 180 days or the period of this appeal, whichever expired last. Knox County immediately filed a notice of appeal to the Court of Appeals.

Meanwhile, in a previously pending case involving the constitutionality of Knox County's Adult Establishment Ordinance, the United States District Court for the Eastern District of Tennessee entered an order invoking Rule 23 of the Rules of the Tennessee Supreme Court and certifying the following questions regarding the charter:

(1) Whether the Knox County Charter fails to comply with the State enabling

---

[4]Certain of the parties to this action contend that the Knox County Mayor was not authorized under the charter to appoint a Charter Review Committee in 2006, and, in consequence, the committee was not authorized to propose the charter amendments, which were submitted to the Knox County voters. This contention, however, does not relate to the matters before us in this appeal. We have included the actions of the committee and outcome of the election to provide background information only.

legislation and is therefore invalid[.]

(2) If the answer to Question # 1 is "yes," whether the Charter should be considered effective as a de facto charter or under other principles of equity[.]

Order, <u>Richland Bookmart, Inc. v. Knox County</u>, No. 3:05-CV-229 (E.D. Tenn. June 28, 2006). Two weeks later, the district court certified an additional question:

(3) Whether the opinion in *Jordan, et al. v. Knox County, et al.*, is void for lack of subject matter jurisdiction in light of *City of Fairview v. H. H. Spears*, 359 S.W.2d 824 (Tenn. 1962)[.]

Supplement to Certification Order, <u>Richland Bookmart, Inc. v. Knox County</u>, No. 3:05-CV-229 (E.D. Tenn. July 11, 2006).

On July 5, 2006, Knox County asked this Court to immediately assume jurisdiction of this appeal under Tennessee Code Annotated section 16-3-201(d)(Supp. 2006). Commissioner Schmid had filed a similar motion five days earlier and had also sought an expedited appeal. This Court granted both motions in an effort to facilitate the appeal process.

On August 24, 2006, only days before this Court heard arguments in Knoxville, the Secretary of State issued a proclamation acknowledging receipt of the 1988 Knox County Charter and certifying the referendum election results from November of that year. On the following day, the county clerk received the proclamation and attached it to the copy of the charter which had been previously filed in his office. This Court granted the request by Knox County that we consider these and other post-judgment facts. On November 7, 2006, the charter amendments proposed by the Charter Review Committee in an effort to address the omissions identified by the chancellor, specifically those relating to the county's constitutional officers, appeared on the Knox County General Election Ballot. The amendments passed by a majority of the vote.

## II. Analysis

### A. Standard of Review

Each of the grounds presented for review involve questions of law. On appeal, the conclusions of a trial court on issues of law are reviewed de novo with no presumption of correctness. <u>Kendrick v. Shoemake</u>, 90 S.W.3d 566, 569 (Tenn. 2002); <u>Carvell v. Bottoms</u>, 900 S.W.2d 23, 26 (Tenn. 1995). Any question regarding the scope of local governmental authority is a question of law; thus, our review is entirely de novo, according no deference to the conclusions of law made by a trial court. <u>S. Constructors</u>, 58 S.W.3d at 710. A trial court's application of the law to the facts must also be reviewed de novo, with no presumption of correctness. <u>State v. Thacker</u>, 164 S.W.3d 208, 247-48 (Tenn. 2005).

### B. Statutory Construction

10

Recently, this Court confirmed the principles applicable to the interpretation of a legislative enactment:

> Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. "'Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.'"

> When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning.

Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004) (citations omitted). Construction should not impair, frustrate, or defeat the object of a statute. First Nat'l Bank of Memphis v. McCanless, 207 S.W.2d 1007, 1010 (Tenn. 1948). It is the duty of the Court to place a construction on a statute that will not be prejudicial to the public interest. Tidwell v. Collins, 522 S.W.2d 674, 677 (Tenn. 1975). These rules of construction apply to local ordinances, a county charter and any amendments, or any other legislation by a local government. See Cherokee Country Club, Inc. v. City of Knoxville, 152 S.W.3d 466, 473 n.2 (Tenn. 2004); City of Chattanooga v. Davis, 54 S.W.3d 248, 265 (Tenn. 2001); Westland West Cmty. Ass'n v. Knox County, 948 S.W.2d 281, 283 (Tenn. 1997).

### C. Standing

As a preliminary matter, we must address questions of standing. In a prior order, this Court took motions to dismiss on this basis under advisement.

On August 8, 2006, the sheriff and the county clerk filed a motion to dismiss the appeal of Commissioner Schmid, who, like most of the Plaintiffs, had won re-election in the August election. Sheriff Hutchison and County Clerk Padgett argue that because Commissioner Schmid was re-elected, he has not been injured or prejudiced by the chancellor's decision and, therefore, lacks standing to appeal or otherwise participate in the litigation. They claim that Commissioner Schmid has no special interest or loss that is not common to the body of citizens as a whole. Knox County also filed a motion to dismiss Commissioner Schmid's appeal, alleging that the county is "the only aggrieved party" and the "only rightful appellant."

In response, Commissioner Schmid first contends that as an incumbent county commissioner

11

under the charter, he has been injured by the finding of its invalidity by the chancellor. Secondly, he maintains that his right to office and his authority to act as a commissioner will be conclusively determined in this litigation. Finally, Commissioner Schmid asserts that his interest in protecting the effectiveness and integrity of his prior votes and actions as a county commissioner afford him standing.

In Knierim v. Leatherwood, 542 S.W.2d 806 (Tenn. 1976), this Court ruled that "*[s]tanding* is a judge-made doctrine which has no per se recognition in the rules. It is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action." Id. at 808. More recently, this Court addressed the issue in Am. Civil Liberties Union of Tenn. v. Darnell, 195 S.W.3d 612 (Tenn. 2006):

> Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. . . . Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."

> . . . First, a plaintiff must show a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient. . . .

> The second essential element of standing is a causal connection between the claimed injury and the challenged conduct. A plaintiff may satisfy this element by establishing the existence of a "fairly traceable" connection between the alleged injury in fact and the defendant's challenged conduct. The third and final element necessary to establish standing is a showing that the alleged injury is capable of being redressed by a favorable decision of the court.

> . . . Specifically, courts should inquire:

> > Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

Am. Civil Liberties Union, 195 S.W.3d at 619-21 (citations omitted).

In light of the term limits provision of the charter and as a direct result of this Court's decision in Bailey, the official status and the future responsibilities of the commissioners under the Knox County Charter are at issue. In that regard, each of the commissioners have a sufficient personal interest in the outcome of this action. See SunTrust Bank Nashville v. Johnson, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000); Metro. Research Auth., Inc. v. Metro. Gov't of Nashville &

12

Davidson County, 842 S.W.2d 611, 618 (Tenn. Ct. App. 1992). While attacking the viability of the 1990 charter, none of the commissioners have otherwise challenged the legal existence of Knox County or sought to terminate local governmental authority so as to require that this action be brought quo warranto. See City of Fairview v. Spears, 359 S.W.2d 824, 828 (Tenn. 1962). Instead, the primary objective of the suit filed by the Plaintiffs is to ascertain their eligibility to stand for re-election under prior law based upon their assertion that the procedural deficiencies in the new charter form were fatal to its existence. See Fallin v. Knox County Bd. of Comm'rs, 656 S.W.2d 338, 342 (Tenn. 1983). In our view, the commissioners have established that their injury is subject to redress by the courts. Just as the original Plaintiffs have standing to file this action, Commissioner Schmid, who sought re-election while maintaining the validity of the term limitations provision, has standing to appeal the decision. The motions to dismiss Commissioner Schmid's appeal for lack of standing must be denied.

Although not presented to this Court in motion form, the election commission, in response to Knox County's contention that the trial court lacked subject matter jurisdiction to declare the charter invalid, questioned whether it had standing to seek a determination as to the qualifications of the candidates for the 2006 ballot. Under Shelby County Election Comm'n v. Turner, 755 S.W.2d 774, 776-77 (Tenn. 1988), the Knox County Election Commission, as a counter- and third-party Plaintiff, does, in fact, have standing to seek a declaratory judgment from the trial court as to the eligibility of the individuals who had submitted qualifying petitions for re-election. Tennessee Code Annotated section 2-5-204(a) (2003) provides that each county's election commission shall place the name of every "qualified candidate" on the ballot. Id. Because we held in Bailey that term limits are a "qualification for holding office," the election commission had standing to determine the validity of the term limits provision contained in the charter. See Bailey, 188 S.W.3d at 545. A resolution of the issues of whether the parties were eligible for re-election or whether the offices validly exist is necessary to enable the election commission to carry out its duties properly. The election commission has not challenged the validity of the charter but has sought to determine which candidates qualified for the ballot and which offices were to be filled. See City of Memphis v. Shelby County Election Comm'n, 146 S.W.3d 531, 539 n.7 (Tenn. 2004) (stating that the duties of the election commission are ministerial in nature and the body must call on the courts to decide the related substantive issue). In order to determine the applicability of the term limitations, the chancellor was required to consider the allegations pertaining to validity of the charter, which the 1994 provision amended.

### D.  Subject Matter Jurisdiction

In City of Fairview, this Court held that a suit to invalidate a city charter could only be filed in the name of the state. 359 S.W.2d at 828. Like the matter before us, the history of the City of Fairview's charter involved a variety of procedural irregularities. Id. at 825. After alleging that the city's incorporation process violated the statutory requirements, the plaintiffs, private citizens acting in their capacity as "residents, citizens and taxpayers," sought to invalidate the charter. Id. This Court concluded that "private citizens cannot bring an action to have the charter of the City of Fairview declared void, as such action will have to be brought in the name of the state . . . ." Id. at

13

828.[5]

The underlying principle for that decision, of course, is that a challenge to the existence of a local governmental unit is a public matter and that redress should be exclusively through the state. That principle was confirmed in Cole v. Langford, 427 S.W.2d 562, 565 (Tenn. 1968) and later in Corp. of Collierville v. Fayette County Election Comm'n, 539 S.W.2d 334, 336 (Tenn. 1976). In the latter case, however, the suit was allowed to proceed without the state because the plaintiff was a public body and, as a practical matter, exercising a portion of the sovereign power of the state. Id.

As indicated by our analysis of the issue of standing, the Plaintiffs have indeed challenged the viability of the 1990 charter, even though the essence of their suit is to determine their eligibility for re-election, despite term limits, based upon the procedural deficiencies in the adoption of the new charter form. See Fallin, 656 S.W.2d at 342. All of the plaintiffs and each of the individually-named defendants in this instance are public officials, rather than private individuals as in the City of Fairview, and so, in that regard, their ability to sue without the joinder of the state is a case of first impression.[6] Although the jurisdictional issue is close, we hold that the Plaintiff county commissioners qualify as agents for the state sufficiently empowered to proceed with this declaratory judgment action. In summary, we hold that the chancery court had subject matter jurisdiction to adjudicate this controversy.

### E. Tennessee Constitution

The 1977 Limited Constitutional Convention revised significantly the constitutional sections relating to county government. By virtue of the adoption of the convention's recommendations,

---

[5] The common law remedy of quo warranto is codified in section 29-35-101 of the Tennessee Code Annotated. Typically, the suit is brought by the attorney general for the district or county. Tenn. Code Ann. § 29-35-109 (2003). The statutory scheme also sets forth the procedure for filing the suit on behalf of a private individual, Tenn. Code Ann. § 29-35-110 (2003), the proper venue for filing the suit, Tenn. Code Ann. § 29-35-111 (2003), and the content of the complaint, Tenn. Code Ann. § 29-35-112 (2003). A copy of the complaint is served upon the district attorney general who, at his discretion, may dismiss the suit should he determine that it is improperly instituted. State ex rel. Wallen v. Miller, 304 S.W.2d 654, 659 (Tenn. 1957). It is the duty of the trial court to conduct an in limine hearing to determine whether to permit the plaintiff to proceed. If it is determined that the district attorney general unjustifiably refused to bring the action or to authorize use of his name to institute the action, or if the plaintiff's case is prima facie meritorious, the trial court shall permit the action to proceed in the name of the State of Tennessee. Bennett v. Stutts, 521 S.W.2d 575, 577 (Tenn. 1975).

[6] A variety of legal challenges to the metropolitan form of county government, or provisions thereof, were, like this one, also presented in actions for declaratory judgment. See Frazer v. Carr, 360 S.W.2d 449, 450 (Tenn. 1962) (action to declare void metropolitan government); Winter v. Allen, 367 S.W.2d 785, 786 (Tenn. 1963) (a suit by a private citizen with the intervention of the county trustee to declare duties of certain constitutional officers in metropolitan government); Robinson v. Briley, 374 S.W.2d 382, 382-83 (Tenn. 1963) (declaratory action by a county trustee to determine the constitutionality of certain provisions in metropolitan charter); and Metro. Gov't of Nashville & Davidson County v. Poe, 383 S.W.2d 265, 266 (Tenn. 1964) (action by the metropolitan government against the sheriff to declare the rights of certain parties with respect to the charter). Although these cases, each decided following the opinion in City of Fairview, were filed and adjudicated as declaratory judgment actions, the quo warranto issue was not squarely raised.

article VII, section 1 of our state constitution was amended in 1978. The constitutional amendment, consisting of three paragraphs, provides, in pertinent part, as follows:

> **County government – Elected officers – Legislative body – Alternate forms of government. –** The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County Clerk and an Assessor of Property. Their qualifications and duties shall be prescribed by the General Assembly. . . .
>
> The legislative body shall be composed of representatives from districts in the county as drawn by the county legislative body pursuant to statutes enacted by the General Assembly. Districts shall be reapportioned at least every ten years based upon the most recent federal census. The legislative body shall not exceed twenty-five members, and no more than three representatives shall be elected from a district. Any county organized under the consolidated government provisions of Article XI, Section 9, of this Constitution shall be exempt from having a county executive and a county legislative body as described in this paragraph.
>
> The General Assembly may provide <u>alternate forms of county government</u> including the right to charter and the manner by which a referendum may be called. <u>The new form of government shall replace the existing form</u> if approved by a majority of the voters in the referendum.
>
> . . . .

Tenn. Const. art. VII, § 1 (adopted in Convention, December 6, 1977; approved at election March 7, 1978; proclaimed by Governor, March 31, 1978) (emphasis added). As a result of this constitutional amendment, the structure of county government was changed from a system with a county judge, an elective office since 1835 with both judicial and executive authority, and a quarterly county court, which also performed judicial and legislative functions, to the plan provided for under the first paragraph of section 1 of article VII, "wherein the basic units of government are the county executive and county legislative body." State ex rel. Maner v. Leech, 588 S.W.2d 534, 537 (Tenn. 1979). The article's second paragraph provides for the creation of what is commonly known as metropolitan government. The form of county government described under the third paragraph is an alternate form created "without regard to the general type established in Article VII," provided the proposal is ratified by referendum. Id.

### F. Enabling Legislation

After voters of the state ratified article VII, section 1 in 1978, the General Assembly approved enabling legislation restructuring county government in accord with the constitutional changes. 1978 Tenn. Pub. Acts 1428-69. The adoption of legislation was required because the constitutional provision was not self-executing. That is, because the amendment did not address all of the pertinent issues, it could not become operative without the aid of legislation. The statute

provides that a charter form of government "shall result in the creation and establishment of an alternate form of county government to perform all the governmental and corporate functions previously performed by the county." Tenn. Code Ann. § 5-1-203(b)(2005). When a charter is adopted under the statute, the alternate form replaces the existing form of government, see Tenn. Code Ann. § 5-1-203(c), and, under law, "no right, power, duty, obligation or function of any officer, agency or office of such county shall be retained and continued unless [the enabling act] or the charter of such county expressly so provides or unless such retention and continuation be required by the Constitution of Tennessee," see Tenn. Code Ann. § 5-1-202(a).

By the terms of Tennessee Code Annotated section 5-1-210, the enabling legislation, a county charter must provide, among other information not related to the issues, as follows:

(1) For the creation of an alternative form of county government vested with any and all powers that counties are, or may hereafter be, authorized or required to exercise under the Constitution and general laws of the state of Tennessee, and any and all powers and duties of such county that are required or authorized by private acts effective on the date of ratification of such charter, as fully and completely as though the powers were specifically enumerated therein;

. . . .

(4) For the size, method of election, qualification for holding office, method of removal, and procedures of the county legislative body with such other provisions with respect to such body as are normally related to the organization, powers and duties of governing bodies in counties;

(5) For the assignment of administrative and executive functions to officers of the county government, which officers may be given, subject to such limitations as may be deemed appropriate or necessary, all or any part of the administrative and executive functions possessed by the county being chartered and such additional powers and duties, not inconsistent with general law or the Constitution of Tennessee.

(6) For the names or titles of the administrative and executive officers of the county government, their qualifications, compensation, method of selection, tenure, removal, replacement and such other provisions with respect to such officers, not inconsistent with general law, as may be deemed necessary or appropriate for the county government;

. . . .

(9) For the method and procedure by which such charter may subsequently be amended; provided, that no such amendment shall be effective until submitted to the qualified voters of the county and approved by a majority of those voters voting

thereon;

    . . . .

(12) <u>That the duties of the constitutional county officers as prescribed by the general assembly shall not be diminished under a county charter form of government; provided, however, that such officers may be given additional duties under such charters</u>.

Tenn. Code Ann. § 5-1-210 (emphasis added).

## G. Contentions

The Plaintiff county commissioners, the sheriff, the trustee, the register of deeds, the county clerk, and school board member Anderson all assert that the charter is invalid because it fails to comply with the enabling legislation. While Knox County contends that the basic charter is valid, it concedes that the term limits amendment is overly broad, covers too many elected officials, and is generally violative of constitutional due process and law of the land safeguards. The county also argues that by the terms of Tennessee Code Annotated section 5-1-210(3), (5), and (6), the alternate charter form of government need not provide for the functions of the offices other than the county commission and county mayor. Knox County contends, and the enactment's history appears to confirm, that the 1990 charter was designed upon the very basic premise that all of the other offices would continue by operation of law independent of the content of the charter. Commissioner Schmid submits that the charter is valid but argues that the offices of trustee, register of deeds, county clerk, and property assessor were abolished in 1990 pursuant to Tennessee Code Annotated section 5-1-203(c). He contends that the functions of these offices were transferred by the charter to the authority of the county commission and, by ordinance, to the county mayor. The sheriff, the trustee, the register of deeds, and the county clerk insist that the Tennessee Constitution prohibits the charter from departing from the general laws of the state as to their offices and also that of the property assessor. Because these offices and their duties are not described in the charter, these elected officials maintain that the term limits provision has no application to them.

As noted, the charter contains only passing references to the "constitutional" county officers. Its express terms create only the legislative body and a county executive. There is no reference to the governmental functions of the offices of trustee, register of deeds, or property assessor. At no place in the charter is the trustee or register of deeds even mentioned by name or title. The only mention of the property assessor is to indicate that the law director and certain of the school board members shall be elected at the same time as the property assessor. Charter of Knox County, Tennessee, art. V, § 5.01(B). While there is a reference to the county clerk in the context of the procedures relating to the enactment of ordinances, the charter does not address the traditional duties of the office. <u>Id.</u>, art. II, § 2.09. One provision precludes the county executive (mayor) from assuming the constitutional, statutory, or charter duties of the sheriff. <u>Id.</u>, art. III, § 3.03. Another provision establishes the sheriff as the chief law enforcement officer and charges him with the enforcement of the ordinances in the charter as well as the duties prescribed by the general law. <u>Id.</u>,

17

art. III, §3.09. Without otherwise specifically mentioning names, titles, qualifications, or functions, however, the charter, by referring to the "constitutional officers," was crafted with the assumption (as subsequent events confirmed) that the omitted constitutional county offices (sheriff, trustee, register of deeds, county clerk, and property assessor) would continue to exist and that those elected to the positions would perform the traditional duties of their offices.

### H.  Pre-1977 Case Law and the Limited Constitutional Convention

The status of "constitutional officers" became an important issue in cases arising after the formation of the Metropolitan Government of Nashville and Davidson County.  In Winter, the county clerk in Davidson County asserted that because his office was constitutionally based, his duties could not be diverted to the property assessor.  367 S.W.2d at 787-90.  He argued that he had been unconstitutionally deprived of his official responsibilities in contravention of the general law. Id. at 788.  This Court rejected the argument, holding that while the county clerk and other local offices are generally included in county government by the terms of our constitution, the specific duties and functions of the offices are prescribed by law and may be repealed, abolished, or transferred by a new and different law.  Id. at 789.  In Glasgow v. Fox, 383 S.W.2d 9 (1964), this Court rejected the contention by certain election commissioners that the enabling legislation for metropolitan government abolished every local or county office not expressly retained by the statute or by the charter:

> "No such broad effect, in our opinion, can be given this provision.  When construed with the other parts of the Act, as must be done, it does not evidence a legislative intent to abolish or destroy all officers of the former consolidated governments not expressly retained."  Id. at 11.  This Court held that the position of constable was "a constitutional office like that of sheriff, trustee, and register, and that none of these offices can be abolished by the Legislature."  Id. at 10 (citations omitted); see Redistricting Cases, 80 S.W. 750, 756-57(Tenn. 1904);  State ex rel. Hays v. Cummins, 42 S.W. 880, 881 (Tenn. 1897); On the petition to rehear in Glasgow, this Court ruled that the legislature, by the Consolidation Act of 1957, "did not abolish the office of constable or any other constitutional office; nor did it authorize the Charter Commission to do so."  Glasgow, 383 S.W.2d at 13.

The 1977 Limited Constitutional Convention changed the landscape of county government in this state.  Ironically, there was a procedural glitch.  The bill calling for a convention referendum was never signed by Governor Ray Blanton, who opposed the measure.  Based on an Attorney General's opinion indicating that the Governor's signature was not necessary, however, the bill was deemed enacted.  Tenn. Op. Att'y Gen. No. 59 (1976).  Although the Tennessee Court of Appeals later determined that gubernatorial assent was, in fact, required, it declined to interfere with the convention after the fact.  Crenshaw v. Blanton, 606 S.W.2d 285, 289-90 (Tenn. Ct. App. 1980); see Lewis L. Laska, The 1977 Limited Constitutional Convention, 61 Tenn. L. Rev. 485, 489-90 (1994).

Term limits were a topic at the convention, as the delegates proposed and adopted the present

18

two-consecutive-term limitation for the office of Governor. Journal of the Debates of the Constitutional Convention (1977) 457-58 (hereinafter "Journal"); see Tenn. Const. art. III, § 4. Proposed language that would have limited sheriffs to "no more than two terms consecutively" was defeated. Journal at 750, 1294, 1301. Several parties to this action have argued that the delegates to the convention opposed term limits under the charter form of government. That claim is supported by an observation by J.D. Lee, the Convention President:

> The next section is terms of office. Uniform four-year term for all elected officials. This is a substantive change over the current system. Presently the presiding officer over the county court, if it is a county judge, he has an eight-year term; if it is a county chairman, he has a one-year term. This would reduce the [county] judge from an eight-year term to a four-year term; board of education members are usually elected for six years, this would reduce them to four years also. Justices of the Peace as they are now known serve six-year terms. They would be reduced, hereafter known as county legislators, and serve four-year terms. Sheriffs would be increased from two to four-year terms. Constables would be increased from two to four-year terms. The Committee considered certain limitations on terms and nearly unanimously rejected any such limitation on any office.

Journal at 683 (Oct. 31, 1977) (emphasis added). While the convention delegates did not recommend term limits for the constitutional county officers, however, it has been suggested that their reluctance to do so was based on a fear of "the wrath of these influential officers, which could have spelled defeat for ratification." Laska, supra. at 522 ("The delegates knew that without the sheriffs' support the county government provision would likely fail ratification.").

The General Assembly's call of the constitutional convention in 1977 empowered that body to "alter, reform or abolish," inter alia, "Article VII, Sections 1 and 2 relative to county officers." 1976 Tenn. Pub. Acts 1287-96, § 1. As a result of the convention, certain offices like that of ranger, whose duty by law was to "round up stray cattle," justice of the peace, coroner, and constable were deconstitutionalized. Laska, supra. at 493, 517, 521. In a 1981 opinion, the Attorney General observed that the third paragraph of article VII might allow for the "exclusion of officers enumerated under Paragraph 1" (i.e., sheriff, trustee, county clerk, register of deeds, and property assessor). Tenn. Att'y Op. Gen. No. 81-118, 1981 WL 142765 at *2 (Feb. 24, 1981). Nevertheless, the Attorney General, after a review of the debates, opined "that the convention's intent was to require the officers enumerated in Paragraph 1 to be retained even under an alternate form of government" as described in the third paragraph. Id. For over 25 years, this view prevailed.

## I. **Bailey v. County of Shelby**

Before the application for permission to appeal with this Court was filed, the Court of Appeals, relying upon a pre-1977 case, made the following observations in Bailey v. County of Shelby:

> The proposition that county governments operating under a form of government other than the traditional form may eliminate the constitutional officers

19

. . . is unsupported by the case law. In <u>Metropolitan Government of Nashville and Davidson County v. Poe</u>, 215 Tenn. 53, 383 S.W.2d 265 (Tenn. 1964), the Tennessee Supreme Court considered this proposition in the context of the consolidated government of Nashville and Davidson County, which operates as a consolidated home-rule government under a metropolitan charter pursuant to Article XI, Section 9 of the Tennessee Constitution. . . .

The supreme court expressly rejected, however, the proposition that a charter government organized pursuant to Article XI, Section 9, could eliminate the constitutional office of sheriff. The court stated:

> Article 7, Section 1 of the Constitution of Tennessee provides that 'There shall be elected in each County, by the qualified voters therein, one Sheriff, one Trustee, one Register;' etc. In the Constitution of 1796, Article 6, Section 1, it was provided that 'There shall be appointed in each county, by the county Court, one sheriff, one coroner, one trustee,' etc.
>
> In the Constitution of 1834, by Article VII, Section 1, it was provided that 'There shall be elected in each County, by the qualified voters therein, one Sheriff, one Trustee, one Register,' etc.
>
> It is obvious that express provisions have been made in all three Constitutions adopted by the voters of Tennessee for the office of Sheriff, and any language that may have been employed in any prior decisions of this Court, and particularly in <u>Robinson v. Briley</u>, supra, [374 S.W.2d 382 (Tenn. 1963)] from which it might be remotely concluded that we held the office of Sheriff or any other constitutional office could be or was abolished by the Charter was a mere inadvertence and not meant to be a holding of this Court.
>
>         . . . .

<u>Bailey v. County of Shelby</u>, No. W2005-01508-COA-R3-CV, 2005 WL 3115915 at *9-10 (Tenn. Ct. App. 2005) (quoting <u>Metro. Gov't of Nashville & Davidson County v. Poe</u>, 383 S.W.2d 265, 268 (Tenn. 1964)).

The Court of Appeals found that the alternate form of government, just like the metropolitan form, did not authorize the elimination of the constitutional officers of the county and decided that the third paragraph of article VII could not be interpreted as a "stand-alone provision." It ruled that the offices of sheriff, trustee, register of deeds, county clerk, and property assessor were firmly embodied in our state constitution:

A plain reading of this subsection compels a conclusion that county governments

must include the *constitutional* officers whose statutorily defined duties may not be diminished by the charter. . . .

.  .  .  .

. . . In the absence of an express exemption like that provided in paragraph two of Article VII for Article XI, Section 9 consolidated governments, this court is loathe to disturb a historical Tennessee constitutional mandate.

Bailey, 2005 WL 3115915 at *11.

After a careful analysis of the charter county government under article VII, section 1 of the Constitution of the State of Tennessee and the enabling legislation found at Tennessee Code Annotated section 5-1-201 to -215, this Court reversed the Court of Appeals' decision in Bailey v. County of Shelby, 188 S.W.3d 539, 546 (Tenn. 2006). A unanimous Court observed that "Article VII [of the Tennessee Constitution] grant[ed] broad authority to a county to go so far as to *replace* its existing government in favor of an alternate government, provided the people approve." 188 S.W.3d at 546. This Court

reject[ed] the notion that an alternative government formed under the third paragraph of Article VII must conform to the language in the first paragraph of Article VII, i.e., "qualifications and duties [of elected county officials] shall be prescribed by the General Assembly" only. To hold otherwise would mean that a county could adopt a new form of government that is controlled by the old form of government that the new one replaced.

Id.

Our decision in Bailey did not address whether the Shelby County Charter[7] complied with the requirement of the enabling legislation that the charter must provide for "an alternate form of county government to perform all of the governmental and corporate functions previously performed by the county." Tenn. Code Ann. § 5-1-203(b). The validity of that charter was not an issue. Moreover, while the plaintiffs in Bailey argued that the constitutional county officers mentioned in paragraph one of article VII "could not be abolished by a government formed under paragraph three of Article VII," 188 S.W.3d at 546, this Court properly refrained from an advisory ruling. We explained that the case was "not about Shelby County having abolished the officials identified in the first paragraph of Article VII," nor did it "involve an attempt to diminish the duties of [those] elected county officials." Id.; see also Tenn. Code Ann. 5-1-210(12) (The enabling legislation precluded any diminution of "the duties of the constitutional county officers as prescribed [by statute] . . . under

_____

[7]Shelby County has filed an amicus curiae brief because the Shelby County Charter "may contain" provisions similar to the Knox County Charter. The Shelby County Attorney points out that its charter, like the Knox County Charter, does not recreate the offices of the constitutional county officers, but was approved with the implicit understanding that the constitutional officers were an integral part of the new charter.

21

a county charter form."). Our opinion did, however, reject the implication that paragraph one requirements were necessarily a part of the alternate county governments established under paragraph three:

> Regardless, the plaintiffs' arguments are premised upon their view that alternative governments formed under the third paragraph of Article VII are controlled by the first paragraph of Article VII. . . .

Bailey, 188 S.W.3d at 546. The thrust of the Bailey holding in that regard is that if there is no requirement that the third paragraph of article VII conform to the language of the first paragraph as to qualifications and duties, the offices named in the first paragraph, including those of sheriff, trustee, property assessor, register of deeds, and county clerk, are not essential to an alternative form of government. The implication of Bailey is that because the constitutional officers of a county are not necessary in the charter form, then no duty, obligation, or function of these offices and officers is retained unless expressly provided for in the charter or required by the constitution or the enabling legislation.

Our opinion in Bailey strongly suggests that the 1990 Knox County Charter is, in fact, incomplete and fails to comply with the requirements of Tennessee Code Annotated sections 5-1-203(b) and 5-1-210(5), (6), and (7). As observed by the chancellor, Knox County's position on the charter contradicts our pronouncement in Bailey that paragraphs one and three of article VII, section 1, are not to be read together. Indeed, if a chartered county cannot abolish the constitutional offices and is compelled to retain them (as opposed to the functions that these positions serve), the "new form of government [would be] controlled by the old form," a result this Court specifically rejected in the Bailey opinion. 188 S.W.3d at 546.

Knox County's claim that its charter is not required to provide for the constitutional county offices and that they somehow exist separate and apart from the charter by operation of law does not take into account the requirements of the enabling legislation. Our constitution authorizes the General Assembly to grant counties the right to establish governments under either the traditional or metropolitan forms or to create an alternate charter form of county government. Although the second sentence in the third paragraph of article VII, section 1 provides that the new form of government "shall" replace the existing form if approved by a majority of the voters, the new form must also comport with the enabling legislation. In order to meet the latter standard, the "new form of government" must satisfy the requirements found at Tennessee Code Annotated section 5-1-210, including the provision that "the duties of the constitutional county officers as prescribed by the general assembly shall not be diminished under a county charter form of government; provided that such officers may be given additional duties under such charters." Tenn. Code Ann. § 5-1-210(12). In Bailey, this Court unequivocally concluded that the third paragraph of article VII is not controlled by its first paragraph. Therefore, the subsection requires that the "duties," which are clearly essential for a complete county government, not be neglected in an alternate form of government; but, as this Court ruled over forty years ago in Winter, the duties may be transferred to another county official, so long as the duty is performed. 367 S.W.2d at 790. The decision in Bailey implied that Tennessee Code Annotated section 5-1-210(12) provides that it is only when the charter does "retain" the

22

constitutional county offices in the alternate form of government that the duties, as already described by our constitution and statute, may not be diminished. The point, of course, is that the offices must first be "created" under the charter. A comparison of the constitutional terminology and the statutory language compels this interpretation, as does the holding in Bailey. Article VII, paragraph 3 of our constitution grants the power to the counties not to have these officers at all. As indicated by the opinion in Leech, the third paragraph is an alternate form created "without regard to the general type established in [the first paragraph] in Article VII." 588 S.W.2d at 537.

As observed by the chancellor, the Knox County Charter is not a valid (de jure) charter under the law. Because the charter does not provide for the constitutional county offices or otherwise assign their duties to any other office, agency, or official, it is indeed incomplete. Tennessee Code Annotated section 5-1-203 requires that the charter contain all necessary governmental functions. The services offered by the constitutional officers must be maintained in some fashion in order to meet the requirements of law. Absent specific provisions in the charter, "no right, power, duty, obligation, or function" of any constitutional county officer in the prior government exists in the new alternate form. Because the offices of sheriff, trustee, property assessor, register of deeds, and county clerk are not expressly provided for in the new charter, there is no basis in the law for those offices in the alternate form of Knox County government.

## I. **De Facto Government**

A government de jure has been defined as one legally established and functional. Black's Law Dictionary 716 (8th ed. 2004). A de facto government is one existing in fact, having effect even without a formal or legal basis. Norton v. Shelby County, 118 U.S. 425, 448 (1886). While the de facto doctrine has not been applied in this state to a charter for a local governmental entity, this Court has applied the principle to public officials and, in particular, to judicial officers. In Bankston v. State, 908 S.W.2d 194, 196-97 (Tenn. 1995), for example, we recognized that a judge acting under color of law and with the acquiescence of the litigants and the public qualifies as a judge in fact, whose rulings control regardless of whether his authority to act violated the constitution. Id. at 196. In that case, this Court disqualified a municipal judge from exercising concurrent jurisdiction over state criminal cases and from holding office because he was not elected in accordance with article VI, section 4 of the Tennessee Constitution. Id. at 198. We afforded legitimacy to his judgments, however, because the defendant had failed to challenge his authority to act in either the municipal court or on direct appeal. Id. Our Court specifically approved the language of the United States Supreme Court in Norton:

> The doctrine which gives validity to acts of officers de facto, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy or necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public . . . . For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question.

23

Id. at 196-97 (quoting Norton, 118 U.S. at 441-42) (emphasis added).

The doctrine of de facto officers had become a part of Tennessee jurisprudence by 1848. In Bates v. Dyer, 28 Tenn. (9 Hum.) 162 (1848), this Court made the following observations about the actions of a sheriff who lacked eligibility to serve:

> At the time the deed was executed . . . Newman was the acting sheriff of the county under an election made in due form; and although he was, at the time of his election, ineligible on account of his defalcation, yet this does not avoid his acts done as sheriff before his election was annulled by the proper authority; previous to that event, though he was not sheriff *de jure*, yet he was *de facto*; and, from public necessity, the acts of a public officer, exercising his office *de facto*, though not *de jure*, are valid as to third persons, and cannot be controverted in a collateral issue such as this.

Id. at 163; see also Att'y Gen. v. Leaf, 28 Tenn. (9 Hum.) 753, 755-56 (1849); C.D. Venable & Co. v. Curd, 39 Tenn. (2 Head) 582, 585-86 (1859); Blackburn v. State, 40 Tenn. (3 Head) 690, 691 (1859). In City of Nashville v. Thompson, this Court again invoked the de facto doctrine:

> A person inducted into an office according to the forms of law is an officer *de facto*, although incompetent by the provisions of the Constitution to hold the office, and his competency cannot be [i]nquired into by the parties affected by his acts . . . . [H]is official acts [are] valid and binding, until he is removed in the manner prescribed by law.

80 Tenn. 344, 347-50 (1883).

In Beaver v. Hall, 217 S.W. 649 (Tenn. 1920), this Court applied the de facto concept to uphold the rulings of a court despite a subsequent declaration of invalidity:

> We believe that the same consideration of public policy that led the courts to adopt the de facto doctrine as a means of protecting the rights of the public who deal with officers acting under color of authority should be invoked in this case to protect the acts of a tribunal organized under an act of the Legislature, apparently valid, until there has been a judicial determination of the invalidity of such a court.

Id. at 654. In Shoup Voting Mach. Corp. v. Hamilton County, 152 S.W.2d 1029 (Tenn. 1941), this Court, relying on its decision in State ex rel. Roberts v. Hart, 61 S.W.780 (Tenn. 1901), a case in which a school board was held to be a de facto organization whose acts were not subject to collateral challenge, found that the mere participation of an ineligible member on the quarterly county court could not deprive the agency of the status of a de facto body. 152 S.W.2d at 1031. The following observation is particularly instructive:

24

> A county is a corporation . . . the people being likened to the stockholders, and the justices of the peace to the directors or managing officers of a private corporation. In case of private corporations, the law has been thus stated: "<u>Persons who hold office as directors . . . with the consent of the corporation, and under color of an election or appointment, are de facto officers, although their election or appointment may have been illegal and their acts as such, in so far as third person are concerned, are just as valid and binding upon the corporation as if they were officers de jure</u>."

Id. (quoting 3 <u>Clark and Marshall on Corporations</u>, 2035 (emphasis added) (citations omitted). This Court held that while "[a] public corporation like a county is not to be dealt with as a private corporation in all respects[,]" there was "no reason to rule that a public corporation [like Hamilton County] should be held to have made a contract which those, recognized by it as its lawful agents, declined to adopt." <u>Id.</u> at 1032. In consequence, the third party's collateral challenge to the validity of the legislative body was dismissed. <u>Id.</u>

In <u>Kidd v. McCanless</u>, 292 S.W.2d 40 (Tenn. 1956), this Court considered whether the de facto doctrine could be applied to maintain members of the General Assembly in office in view of the invalidity of the apportionment statute. The Court held that "there can be a <u>de facto</u> body or office . . . until there has been a judicial determination of the invalidity of same." <u>Id.</u> at 43.

As recently as 1995, this Court addressed the de facto doctrine in <u>State ex rel. Newsom v. Biggers</u>, 911 S.W.2d 715, 716 (1995), upholding a sentence imposed by a municipal court judge who had been elected to a term shorter than that mandated by article VI, section 4 of our constitution. The Court quoted with approval the language in <u>Martin v. Dowling</u>, 315 S.W.2d 397 (Tenn. 1958):

> The judicial acts of one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with a good-faith belief in his right to exercise his authority, invoked and acquiesced in by the parties, the bar, court officials and the public, are those of a *de facto* officer.

<u>Biggers</u>, 911 S.W.2d at 718 (quoting <u>Martin</u>, 315 S.W.2d at 399).

Other states have specifically applied the de facto doctrine in circumstances involving local governments. For example, in <u>Bowman v. City of Moorhead</u>, 36 N.W.2d 7 (Minn. 1949), the Supreme Court of Minnesota determined that the home rule charter of a city had several irregularities, including the failure of publication in accordance with the state constitution. <u>Id.</u> at 8. That court determined that a public corporation exists as a de facto body when there is

> (1) Some law under which a corporation with powers assumed might lawfully have been created;

> (2) A colorable and bona fide attempt to perfect an organization under such a law;

25

(3) User of the rights claimed to have been conferred by the law.

36 N.W.2d at 9. This rule, which was applicable to private corporations, was applied equally to a public corporation. Id. The Minnesota Supreme Court stressed the importance of stability and certainty in local governmental matters and emphasized the need to avoid the severe consequences which might follow, such as the issuance of governmental bonds, absent the application of the doctrine. Id.

Several states have followed the course of Minnesota in the recognition of a de facto public corporation. See Cherry v. City of Hayti Heights, 563 S.W.2d 72 (Mo. 1978)[8]; Fox v. Personnel Appeal Bd. of City of Cranston, 209 A.2d 447 (R.I. 1965); Stroiney v. Crescent Lake Tax Dist., 533 A.2d 208 (Conn. 1987); City of Bethany v. Mason, 210 P.2d 353 (Okla. 1949); Smith v. City of Emporia, 211 P.2d 101 (Kan. 1949); Clemens v. Pinehurst Water Dist., 339 P.2d 665 (Idaho 1959). Even in quo warranto actions where a state, because of the defects in the incorporation process, has challenged a local governmental entity, courts have typically refused to nullify governmental actions based upon the rationale that whatever the legislative body had the power to do, it could ratify based upon a period of recognition of the improperly organized entity. State ex rel. Young v. Village of Harris, Chisago County, 113 N.W. 887, 888 (Minn. 1907). Ergo, the state, after a period of acquiescence and recognition of a local governmental entity, may be precluded from challenging the lawful existence of that entity. The equitable principle of estoppel is often warranted by these circumstances. City of Winter Haven v. State ex rel. Landis, 170 So. 100, 108 (Fla. 1936); see also State ex rel. Dawson, Att'y Gen. v. City of Harper, 146 P. 1169 (Kan. 1915); and People ex rel. Kidd v. Crowley, 95 N.E. 192 (Ill. 1911).

Since 1990, the county executive/mayor and the Knox County Commission, acting pursuant to the charter adopted by referendum in 1988, have conducted the affairs of the community. The county commission has enacted numerous ordinances and resolutions relating to the county pension plan, purchasing and procurement, personnel policies and procedures, air quality management, codes administration, zoning, a special fire district, and a myriad of other matters. In 1990, 1994, 1998, 2002, and 2006, the voters of Knox County cast ballots not only for the executive or the mayor and commissioners but also for the offices of trustee, sheriff, register of deeds, and county clerk. They voted for a property assessor in 1992, 1996, 2000, and 2004. Without specific precedent in the law, it was not unreasonable for the voters to assume that all of these offices existed as part of their

---

[8]The Missouri Supreme Court determined that equitable principles precluded the state from attacking the existence of the municipality:

"The courts are hesitant to say that an omission or error in the incorporation of a village brought to attention many years after it occurred makes a nullity of the village's corporate existence and its officers usurpers of powers and duties that do not in law exist. The equities must strongly favor the State before it can be so held . . . .".

Cherry, 563 S.W.2d at 79 (quoting State ex rel. H.B. Deal & Co. v. Stanwood, 208 S.W.2d 291, 296 (Mo. Ct. App. 1948)).

county government. As the result of their "election," the constitutional officers have exercised the traditional duties of their offices by, among other things, collecting taxes, assessing property values for tax purposes, keeping records, issuing business and marriage licenses, registering and licensing motor vehicles, depositing revenue, preserving the peace, keeping the jail, securing the courthouse, serving warrants, and registering deeds.

Under the circumstances, while we agree with the chancellor that Knox County's failure to comply with the enabling legislation for the charter rendered the charter invalid, we find it sufficient that there was "a colorable and bona fide attempt to perfect an organization under [the applicable enabling legislation]." Bowman, 36 N.W.2d at 9. We therefore hold that the Knox County charter established a de facto form of government, effective September 1, 1990. Under this equitable doctrine, the Knox County government has had a valid existence. Moreover, its elected officials, as de facto officers, have exercised the traditional duties of their offices. See Country Clubs, Inc. v. City of Knoxville, 395 S.W.2d 789, 793 (Tenn. 1965). The county executive/mayor and commission, expressly addressed in the charter, have been duly elected and have served in an official capacity without challenge for years. Although not specifically retained by the language of the alternate form charter, other elected officials, identified in the state constitution or otherwise prescribed by statute, have served without challenge for as many as sixteen years. The public has acquiesced in the acts of the officers for such a length of time as to establish the presumption of colorable right to the offices. Ridout v. State, 30 S.W.2d 255, 257 (1930). The county officials identified in our state constitution have been elected and re-elected by the people; they have served in the traditional roles of their respective offices; and the services they have performed qualify as essential to the Knox County government.

### K. Term Limits Amendment

In the early 1990s, limitations on the number of years that an individual could serve in office became a popular theme. Steven F. Huefner, Term Limits in State Legislative Elections: Less Value for More Money?, 79 Ind. L.J. 427, 428 (2004). These measures attracted widespread support on the premise that they would oust from office entrenched incumbents who had lost touch with their constituents, free office holders from the control of special interests, and restore law-making institutions to their proper composition by enabling a more representative and diverse group of citizens to serve in government. Id. Proponents of term limits proclaimed that forcing incumbents from office at regular intervals would make campaigns more competitive and interesting, bringing in fresh ideas and providing a more attractive selection of candidates. Id. at 439.

Consistent with the national trend, the people of Knox County, as indicated above, voted in favor of a charter amendment in November of 1994. Effective January 1, 1995, the provision declared ineligible from service any person "in any elected office of Knox County if during the previous two terms of that office the person in question has served more than a single term." Charter of Knox County, Tennessee, art. VIII, § 8.17. The chancellor found no fault with the referendum procedure and concluded that it was reasonable for the voters of Knox County to believe that the amendment applied to "all of the elected officeholders in the Knox County government, not part of it." Although the question was not specifically addressed, the chancellor implicitly rejected the

constitutional claim that the amendment failed as either vague in content or overly broad in its application in violation of the law of the land of our state constitution and the due process clause of our federal constitution. The chancellor concluded, however, that the term limits provision was invalid on procedural grounds because it was neither filed nor codified in accordance with article VIII, section 8.05E of the charter.

In this appeal, Knox County contends that the term limits amendment should be limited to its local legislative body and the county mayor, the only offices (other than law director) with duties specifically and comprehensively addressed in the 1990 charter. The county also argues that the 1994 amendment is overly broad, creating possible unintended consequences, in violation of the state and federal constitutions. Commissioner Schmid asserts that the term limits provision should be extended to all elected offices of Knox County government explicitly created by the charter, including the county mayor, the county commissioners, and the law director, as well as to the sheriff, to which office the charter makes general reference.[9] He further claims that the term limits provision more broadly applies to any elected offices of Knox County government implicitly created by the charter, including the trustee, the property assessor, the county clerk, and the register of deeds, traditional county officers performing purely administrative roles.

Term limitations imposed on public officers by constitutional provisions and local charters have generally been upheld as constitutionally valid. Legislature v. Eu, 816 P.2d 1309, 1328 (Cal. 1991) (concluding that state interest in incumbency reform was sufficiently rational and compelling when weighed against the residual burden placed on the rights and privileges of elected officeholders and their supporters); Nevada Judges Ass'n v. Lau, 910 P.2d 898 (Nev. 1996); Miyazawa v. City of Cincinnati, 825 F.Supp. 816, 822 (S.D. Ohio 1993), aff'd, 45 F.3d 126 (6th Cir. 1995) (holding that charter provision did not violate First or Fourteenth Amendment of United States Constitution or state constitution because it did not create an invidious class distinction, it did not unreasonably restrict franchise, and it served a legitimate and compelling public policy). Only months ago, in Bailey, this Court upheld the concept of term limits, concluding that Tennessee Code Annotated section 5-1-210(4), which permits a county charter to establish the qualifications of the county legislative body, did not violate Tennessee's constitution. Bailey, 188 S.W.3d at 545. We held as follows:

> [T]he third paragraph of Article VII does not contain any prohibition on authorizing a chartered county to set the qualifications for members of its legislative body. To the contrary, Article VII grants broad authority to a county to go so far as to *replace* its existing government in favor of an alternate government, provided the people approve. It follows that a chartered county, as authorized by Article VII and statutes enacted by the legislature, may establish the qualifications of the members of its own legislative body. See Southern Constructors, Inc. v. Loudon County Bd. of Educ.,

---

[9]As noted, the charter makes passing reference to "constitutional officers." There is no reference to the functions of the trustee, the register of deeds, and the property assessor. In fact, the trustee and the register of deeds are not mentioned at all. The property assessor is mentioned in the section detailing election of the law director/school board members. There is a brief reference to the county clerk in relation to ordinance procedures.

58 S.W.3d 706, 713 (Tenn. 2001) (chartered counties "possess broad authority for the regulation of their own local affairs").

Furthermore, we note that Article I, section 1, of Tennessee's constitution provides that the people have an "unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper." The constitution is the truest expression of the will of the people, and it is their intent in adopting a constitutional provision that must prevail. See Williams v. Carr, 218 Tenn. 564, 404 S.W.2d 522, 526 (1966) . . . . [W]e continue to adhere to the principle that "the constitution does not mandate a uniform structure of county governments across the state. It specifically authorizes legislation creating different forms of local" government, and the "General Assembly has very broad powers and discretion" in this regard. Leech [v. Wayne County, 588 S.W.2d 270, 272 (Tenn. 1979)].

Bailey, 188 S.W.3d at 546. This Court determined that the term limits are a "qualification for holding office" and that even though "Article VII states that county officials shall be elected for 'terms of four years,'" the phrase should not be construed to mean that "such officials must be capable of being elected to more than one term." Id. at 544-45. This Court construed "terms of four years" as merely referring to the "duration of each term." Id. In consequence, we ruled that our constitution does not "prevent a county from placing a limit on the number of terms that may be served." Id. at 545. This Court observed that if delegates to the Limited Constitutional Convention of 1977 had intended to prohibit a term limitation amendment, that language should have been included in their proposal. Id.

Our opinion in Bailey specifically addresses term limits for members of the county legislative body within the meaning of Tennessee Code Annotated section 5-1-210(4). A preliminary question is whether the General Assembly, by enacting the enabling legislation found at Tennessee Code Annotated section 5-1-201 to -215, gave charter counties the right to establish a qualification for the other elected officers of a county by a term limits amendment.

Tennessee Code Annotated section 5-1-210(6) directs that a county charter "shall provide . . . [f]or the names or titles of the administrative and executive officers of the county governments, their qualifications, compensation, method of selection, tenure, removal, replacement and such other provisions with respect to such officers, not inconsistent with general law, as may be deemed necessary or appropriate for the county." Id. (emphasis added). In Bailey, this Court directed that the statute be "liberally construed as a utilization of the constitutional power granted by" article VII. Bailey, 188 S.W.3d at 544; see Tenn. Code Ann. § 5-1-201(b).

Because the statute permits a county charter to prescribe the qualifications of other elected county officials and based upon our finding in Bailey that the enabling act authorizes county voters by referendum to establish term limit qualifications for their legislative body, this Court holds in the present case that voters may also set eligibility requirements, including term limitations, for the other elected officials in county government. Stare decisis, of course, is a fundamental principle of law.

The appellate courts are not composed of judges free to write their personal opinions on public policy into law. Lewis F. Powell, Jr., Stare Decisis and Judicial Restraint, Journal of Supreme Court History, 1991, at 13, 16. This doctrine is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee, 501 U.S. 808, 827 (1991). The opinion in Bailey controls on this important point.

Having established that the electorate may as a matter of law set term limits for each office subject to popular vote, the next question is whether the 1994 amendment survives constitutional scrutiny. When there is a challenge, the judicial branch of government has a duty to determine the substantive constitutionality of statutes, ordinances, and like measures. City of Memphis v. Shelby County Election Comm'n, 146 S.W.3d 531, 536 (Tenn. 2004). Referenda are to be construed with great deference, because "[w]hen citizens vote in a referendum, they are presumed to know the issue on which they are voting." Pidgeon-Thomas Iron Co. v. Shelby County, 397 S.W.2d 375, 378 (Tenn. 1965). Generally, referendum results are entitled to a presumption of favorability:

> The people once having voted the courts give great weight to their voice and should not lightly invalidate their action, but should look to those things which make the referendum effective and legal rather than to those which might invalidate it.

Id. (emphasis added). This Court must, therefore, when at all possible, interpret either statutes or charter amendments adopted by referendum as compatible with our state constitution. If a provision can be legitimately construed in a variety of ways, "'[i]t is our duty to adopt a construction which will sustain the statute and avoid [that] constitutional conflict, if its recitations permit such a construction.'" State v. Mallard, 40 S.W.3d 473, 480 (Tenn. 2001) (quoting Marion County Bd. of Comm'rs v. Marion County Election Comm'n, 594 S.W.2d 681, 684-85 (Tenn. 1980)). Our primary purpose in interpreting a charter amendment must be "to effectuate the intent of the electorate that adopted it." 42 Am. Jur. 2d Initiative and Referendum § 49 (Supp. 2006) (emphasis added). "Absent ambiguity, a court may presume that voters intend the meaning apparent upon the face of an initiative measure, and a court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." Id.

By the express terms of the 1994 petition, "no person shall be eligible to serve in any elected office of Knox County" if the individual has already served the previous two full terms in that office. The ballot question as prepared by the Knox County Law Director's office differed, adding the word "government" and specifically providing that "no individual shall be permitted to hold the same elected office of Knox County Government more than two (2) consecutive terms." While the petition and the amendment later codified exempted judges, the ballot did not.[10] When addressing the language in the amendment, the chancellor made the following observation:

---

[10]In any event, the enabling statute precludes application to "the judicial system." Tenn. Code Ann. § 5-1-204(f)(1).

When the voters approved a charter form of government, it was reasonable for them to assume that Knox County had a charter that covered its government, not part of its government. When the voters of Knox County were presented with a ballot in 1994 imposing term limits upon individuals holding an "elected office of Knox County government," it was reasonable for those voters to assume that term limits would apply to all of the elected office holders in the Knox County government, not part of it.

Jordan v. Knox County, Tennessee, No. 166799-1 (Knox Co. Ch. Ct., June 9, 2006) at 56 (emphasis added).

The term limits provision at issue in this case is different from the term limits provision in Bailey. Shelby County's term limits provision was explicit as to the offices affected. Only the mayor and the commissioners were targeted by the amendment. Our decision in Bailey affects only the commissioners.[11] The term limits provision in Shelby County Charter specifically provided as follows:

No County Mayor nor any member of the Board of County Commissioners shall be eligible to be elected to or hold the office of County Mayor or County Commissioner for more than two consecutive four-year-terms. Provided, however, if an individual is appointed to fill an unfilled term either for Mayor or County Commissioner, this term shall not be counted as part of the two consecutive elected terms.

Shelby County Charter, art. II, § 2.03(G) (emphasis added).

The Knox County term limits amendment would broadly preclude service of more than two terms for "any elected office." Whereas the 1994 ballot language referred to "hold[ing] the same elected office of Knox County Government," the language of article VIII, section 8.17 of the amendment, taken verbatim from the actual citizen petition, prohibits "serv[ice] in any elected office of Knox County."

Because term limits may be adopted by the electorate, the question is whether the ballot terminology "Knox County government" applies to only the county mayor and commission (and law director), offices with duties specifically defined in the 1990 Knox County Charter, or more extensively applies to any "elected office of Knox County" – any county officeholder who must seek election. If the latter, the amendment could be interpreted to affect not only the offices in the county but also state officials, like the public defender, the district attorney general, and members of the Knox County Board of Education, all of whom exclusively serve within the same jurisdictional limits.

---

[11]In Bailey, this Court does not discuss the applicability of the amendment to the county mayor, who, like the sheriff, the trustee, the register of deeds, the county clerk, and the assessor, is an article VII, section 1 county officer.

Members of the board of education and the court clerks qualify as elected Knox County officers. Under state law, however, the term limits amendment cannot extend to a school board member and has no application to court clerks. The Education Improvement Act of 1991, a general law of the state, preempts the imposition of term limits for a school board member. See Tenn. Code Ann. § 49-2-201(a)(1) (Supp. 2006) ("The members of the board shall be elected for a term of four (4) years and may succeed themselves."); Knox County Educ. Ass'n v. Knox County Bd. of Educ., 60 S.W.3d 65, 79 (Tenn. Ct. App. 2001) ("[T]he provisions of the Education Improvement Act of 1992 repeal and supercede the private act applicable to Knox County . . . ."); Tenn. Op. Att'y Gen. No. 97-041, 1997 WL 188745 (April 7, 1997); Tenn. Op. Att'y Gen. No. 95-007, 1995 WL 69246 (Feb. 15, 1995). The statute trumps the charter amendment as to members of the school board. See Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997) ("Local governments may decide for themselves how best to exercise . . . powers delegated by the General Assembly as long as their decisions do not conflict with state law."). Moreover, the 1994 amendment would appear to prohibit more than two terms of consecutive service for the circuit and criminal court clerks, offices existing pursuant to article VI, section 13 of the Tennessee Constitution, and not controlled by article VII or the charter. The enabling legislation at Tennessee Code Annotated section 5-1-204(f)(1), specifically provides as follows:

> Nothing contained within the provisions of this section shall be construed to affect the judicial system in any county adopting a charter form of government except as its charter or ordinances may direct the imposing, levying or collection of fines, penalties, fees or court costs or the procedures for the filling of vacancies as required by law.

Tenn. Code Ann. § 5-1-204(f)(1) (Supp. 2006) (emphasis added). Vacancies in the offices of the court clerks are filled by the county legislative body. See Tenn. Code Ann. § 16-15-210; Shelby County Election Comm'n v. Turner, 755 S.W.2d 774, 777 (Tenn. 1988); State ex rel. Webster v. LaBonte, 597 S.W.2d 893, 894 (Tenn. 1980); Tenn. Op. Att'y Gen., No. 88-131, 1988 WL 410205 (July 29, 1988). The circuit and criminal court clerks are considered to be county officials. See Overton County v. State ex rel. Hale, 588 S.W.2d 282, 284 (Tenn. 1979). The positions, however, are created as part of the judicial branch of the government. Court clerks may not, therefore, be subjected to term limits, as those offices, as indicated, are addressed under article VI of our constitution, rather than article VII. The enabling legislation permitting the implementation of term limits relates to article VII officers, not officials holding office under article VI. Although not at issue, the district attorney general, while holding "an elected office" in Knox County, is a state official. Tenn. Code Ann. § 8-42-101(3)(C) (Supp. 2006). The public defender, an office which is also not at issue, holds a similar status. Tenn. Code Ann. § 8-14-208 (Supp. 2002). Although with a jurisdiction limited to Knox County, criminal court judges, circuit court judges, and chancellors are state officials. Tenn. Code Ann. § 17-1-203 (1994). General sessions judges and juvenile court judges, if not otherwise protected by the terms of the ballot or the 1994 amendment, are excluded by the enabling statute. Tenn. Code Ann. § 5-1-204(f)(1); see Spurlock v. Sumner County, 42 S.W.3d 75, 79 (Tenn. 2001) (general sessions judges and juvenile court judges are county offices).

The record clearly demonstrates that the members of the Charter Commission drafted the

proposal believing that the offices of sheriff, trustee, register of deeds, county clerk, and property assessor would be preserved regardless of the content of the charter. It was their belief that the constitutional officers would be retained in their traditional roles by the terms of the state constitution. The chancellor confirmed that in his opinion. Each of these officers, however, qualifies as elected to office in "Knox County Government." They are, therefore, subject to the term limitation. We hold that the procedural deficiencies after the adoption of the amendment are of no consequence. This Court finds the nature of the charter's terms governing process are directory rather than mandatory. See Marks v. New Orleans Police Dep't, __ So. 2d ___, 2006 WL 342300 at *6 (La. Nov. 29, 2006) ("If the terms of the statute are limited to what is required to be done, i.e., procedural rules, then the statute is considered directory even though mandatory language is employed.").[12]

When there is a vote of the people, the presumption of favorability must prevail. And, while an amendment to a county's charter clearly cannot apply to state and local officials over which it has no authority, the 1994 referendum results from Knox County demonstrate the obvious intent to limit the terms of county officials to the extent possible under the law.

As stated, the "collective intent" of the people is the object of the Court's search when legislation is enacted by referendum. See Washington State Dep't of Revenue v. Hoppe, 512 P.2d 1094, 1096 (Wash. 1973); 42 Am. Jur. 2d Initiative and Referendum § 49 (Supp. 2006). In this case, our goal has been to ascertain "the intent of the electorate that adopted" the amendment. If the real intent of the voters of Knox County was to limit the terms of "every elected official in Knox County," our law precludes that result. Some offices are protected by the constitution. Others are exempt by statute. The voters, however, overwhelmingly approved the amendment despite the uncertainties as to its application and the questionable wisdom of limiting the terms of county officials exercising purely administrative roles. The term limits provision meets constitutional muster, and its intent must be applied to the extent possible.

In consequence, not only are the Knox County Commissioners subject to term limitations, but that same restriction applies to those other county officers identified in the state constitution under article VII, section 1. Despite the irony of their election and re-election since 1994 and despite the approval by the voters in 2006 after term limitations became an issue, the Plaintiff

---

[12]Article VIII, section 8.05(E) of the charter provides that "the amendment shall become effective at the time fixed in the amendment or, if no time in therein fixed, thirty (30) days after its adoption by the voters of the County. Any Charter amendment shall be published promptly after its adoption in the manner provided in this Charter for adopted ordinances." Id. (emphasis added). Directions as to the publication of adopted ordinances is found in subsections (6), (7), (8), and (9) of article II, section 2.09: "(6) It shall be the duty of the County Clerk to deliver to the Executive of Knox County true and attested copies of all ordinances . . . within four (4) days of final adoption by the Commission;" "(7) It shall be the duty of the County Clerk to deliver to the County Law Director true and attested copies of all ordinances . . . within thirty (30) days of their effective date;" "(8) The County Clerk shall number and compile in an ordinance book all ordinances . . . and shall number and compile in a resolution book all resolutions and shall preserve such books in the County Clerk's office. The County Clerk shall furnish a true copy for a reasonable fee to any person so requesting"; "(9) It shall be the duty of the County Clerk to provide copies of this Charter and amendments thereto, together with all ordinances . . . to the a Knox County Code Commission as provided in Section 4.05 of this Charter."

commissioners, the sheriff, the county clerk, the trustee, and the register of deeds are all ineligible for another term. While the limitations concept may be worthy, at least in theory, its application to popularly elected individuals, who have demonstrated competence and professionality in their service to the community and who remain the people's choice for an office, is trying.

The terms of these public servants who are ineligible for another term do not, however, end with the filing of this opinion. Pursuant to article VII, section 5 of the Tennessee Constitution, every officer shall hold office until a successor is elected or appointed and qualified. In order to assure the continuous representation of all of the people of Knox County in local governmental affairs and as a means of preserving, without interruption, the continuation of essential governmental services, those county commissioners and state constitutional officers otherwise precluded from holding the offices to which they were recently elected may continue as de facto officers until their successors are named in accordance with law.[13] See Hogan v. Hamilton, 179 S.W.128, 129 (Tenn. 1915); see also Cook v. State, 8 So. 686, 688 (Ala. 1890) (holding that a circuit clerk who was no longer qualified to serve was a de facto officer until his successor qualified).

### III. Conclusion

The charter alternatives created by the 1977 Limited Constitutional Convention empowered Knox County to create its own form of local government. While there were deficiencies in the adoption of the 1990 charter, substantive and procedural, we hold that Knox County exists as a de facto governmental body. We also hold that the constitutional county offices were by inference retained under the charter form and have continued to exist under the de facto doctrine. The term limits amendment, enacted under the de facto charter, meets standards of due process and must be upheld as a component of the governmental unit. Any procedural deficiencies subsequent to its adoption have been resolved. The 1994 amendment applies to all elected officials in Knox County government except for the two court clerks and the school board member, each of whom is protected by either the state constitution or by statute. We must conclude, therefore, that under article VII, section 1 of the Tennessee Constitution, the county commissioners and the constitutional officers are subject to term limitations. Accordingly, the judgment of the chancery court is affirmed in part and reversed in part. This opinion is not subject to rehearing under Rule 39 of the Tennessee Rules of Appellate Procedure. The Clerk is directed to certify this opinion as final and to issue the mandate immediately. Costs are taxed to the Plaintiffs and their sureties, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE

---

[13]Article VII, section 2 provides that "[v]acancies in county offices shall be filled by the county legislative body, and any person so appointed shall serve until his successor is elected at the next election occurring after the vacancy is qualified." See State ex rel. Winstead v. Moody, 596 S.W.2d 811, 812 (Tenn. 1980).

34