IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 29, 2012 Session

## RON LITTLEFIELD, ET AL. v. HAMILTON COUNTY ELECTION COMMISSION, ET AL.

Appeal from the Circuit Court for Hamilton County
No. 11C1520     Hon. W. Jeffery Hollingsworth, Judge

No. E2012-00489-COA-R3-CV-FILED-SEPTEMBER 12, 2012

This is the second time the attempt to recall Chattanooga's mayor has been before this court. In the initial appeal, we concluded the trial court acted prematurely and without jurisdiction when it enjoined the election commission from placing the recall issue on the ballot, because the election commission, at that point in time, had not formally decided whether or not to certify the recall petition. After we vacated the void judgment of the trial court, the election commission certified the recall petition and the mayor again filed suit seeking a declaratory judgment that the petition process was flawed and to enjoin the placement of the recall issue on the ballot. The trial court found that the petition seeking the recall of the mayor is invalid and illegal because it does not comply with all the requirements of Tennessee Code Annotated section 2-5-151. The leaders of the recall effort appeal. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in part and Reversed in part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Charles F. Wysong, Jr., James Folkner, and Darrell Silvey, Chattanooga, Tennessee, pro se appellants.

Harold L. North, Jr., Frederick L. Hitchcock, and Tom Greenholtz, Chattanooga, Tennessee, for the appellee, Ron Littlefield.

J. Christopher Clem, Chattanooga, Tennessee, for the appellee, Hamilton County Election Commission.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Janet M. Kleinfelter, Deputy Attorney General, Nashville, Tennessee, for the third party appellee, State of Tennessee.

Michael A. McMahan and Melinda Foster, Chattanooga, Tennessee, for the intervening appellee, City of Chattanooga.

**OPINION**

**I. BACKGROUND**

Ron Littlefield ("the Mayor") is the duly elected and incumbent Mayor of the City of Chattanooga ("the City"). The Mayor's current term extends until April 2013.

During the summer of 2010, certain groups and individuals in the City sought the recall and removal of the Mayor. The pro se appellants, Charles F. Wysong, Jr., James Folkner, and Darrell Silvey ("the appellants") are leaders of the recall movement.

On June 16, 2010, the Hamilton County Election Commission ("Election Commission") certified and approved the form of a petition to be circulated and signed by qualified voters seeking the recall and removal of the Mayor.[1] The Election Commission announced that it would schedule the recall election for the November 2010 state general election if a sufficient number of signatures were collected. The Election Commission subsequently began receiving papers bearing signatures purporting to endorse the recall petition. The voting qualifications of those persons who signed the recall petition were reviewed and, for those signatures found to be valid, a check mark was placed next to that name by the staff.

On August 5, 2010, at a meeting of the Election Commission, it was determined that the number of signatures of registered voters of the City required to support the recall petition would be computed according to the provisions of Section 3.18 of the Charter of the City of Chattanooga ("City Charter"). Under the provisions of the City Charter, the Election Commission determined that 8,957 valid petition signatures would be required for certification of the recall petition.

_____

[1]There were several versions of the petition. The following language was included: "If this petition is determined to have the sufficient number of valid signatures then the Mayor of Chattanooga is automatically recalled and the board of election commissioners shall at once order and fix a date for holding said successor election. . . ."

On August 31, 2010, the Mayor filed a verified complaint for declaratory judgment and injunctive relief against the Election Commission regarding whether it could certify various signatures purporting to support the recall of the Mayor as being valid and lawful. The Mayor alleged the signatures and the petition upon which they appeared were void according to the requirements for validity under Tennessee Code Annotated section 2-5-151. The Mayor also asserted that even if the Election Commission certified the signatures as being valid, the recall question could not be placed on the ballot for voting until the next general county or municipal election, which was not scheduled to occur until August 2012 or March 2013, respectfully.

On September 7, 2010, a hearing was conducted. Based upon the testimony presented and the facts stipulated for consideration, the circuit court found that Tennessee Code Annotated section 2-5-151 controlled the recall process. The trial court also held that the petition seeking the recall of the Mayor did not have the sufficient minimum number of signatures required by Tennessee Code Annotated section 2-5-151, and that, alternatively, an insufficient number of dated signatures were presented to comply even with the lower requirements of the City Charter.

Based on these findings, the trial court concluded that (1) the Election Commission "is not authorized under law to certify the petition[] for [recall]"; and (2) the Election Commission "is not authorized by law to add the [recall] of Ron Littlefield as Mayor of the City of Chattanooga to the November 2, 2010 ballot." A written order containing the same findings was entered on September 8, 2010.

On October 7, 2010, Folkner, who had been allowed to intervene, filed a motion for relief from the final judgment alleging two grounds: (1) that the circuit court lacked subject matter jurisdiction; and (2) that the Mayor lacked standing to challenge the certification of the petition seeking his recall from office. The court denied Folkner's motion, holding that state law allows a court to enjoin the holding of an election when conducting the election would be without apparent authority of law or when special circumstances exist. The trial court held that allowing the recall question to be placed on the November 2010 ballot "would be the sanctioning of an election which did not have the apparent authority of law." Folkner thereafter filed a timely appeal.

In his appeal, Folkner challenged only whether the circuit court had jurisdiction to enjoin an election. On November 3, 2011, we issued an opinion vacating the injunction ordered by the circuit court, concluding that the trial court proceedings were premature because the Election Commission had not formally acted to certify the recall petition. *See Littlefield v. Hamilton Cnty. Election Comm'n*, No. E2010-02410-COA-R3-CV, 2011 WL 5221744 (Tenn. Ct. App. Nov. 3, 2011).

Thereafter, the Election Commission met on November 17, 2011, to certify the recall petition under Section 3.18 of the City Charter, which provision provides that a recall petition be signed by "qualified voters equal in number to at least 50 per centum of the entire vote for all candidates for the office of Mayor cast at the last preceding general municipal election." Calculated under the provisions of the City Charter, 8,957 valid petition signatures would be required for certification of the recall petition in this case. The Election Commission scheduled a contested election on August 2, 2012 to fill the office of Mayor. The Election Commission disregarded Tennessee Code Annotated section 2-5-151(h), which, requires, upon appropriate certification of a proper petition seeking the recall of a duly-elected official, the placement first of the question on the ballot as to whether the elected official should be recalled before holding a contested election to fill the office.

On December 16, 2011, the Mayor filed a second action against the Election Commission, seeking, among other things, a declaration that the Election Commission acted illegally in certifying the recall petition and in setting an election. The Mayor also sought an injunction prohibiting the Election Commission from placing on the August 2, 2012 election ballot any question or issue regarding whether the Mayor shall be recalled or whether a new mayor shall be elected.[2]

The Mayor asserted that Tennessee Code Annotated section 2-5-151(d), and not the City Charter, constituted the governing law establishing the minimum number of valid signatures needed to support a recall petition. The state provision requires that the "[p]etitions shall be signed by at least fifteen percent (15%) of those registered to vote in the municipality or county." Tenn. Code Ann. § 2-5-151(d). Accordingly, if state law governed the minimum number of qualified signatures needed to support the petition, then 14,854 valid petition signatures would be required for certification of the recall petition regarding the Mayor.

The Mayor also challenged the validity of the Election Commission's acceptance of undated signatures as failing to comply with the requirements of Tennessee Code Annotated section 2-5-151(e)(4) that all signatures affixed to a recall petition be dated. In fact, of the 9,718 signatures accepted by the Election Commission as being signatures of registered City voters, some 5,439 signatures were undated. Consequently, only 4,279 signatures from registered City voters complied with the state law requirement that the signatures be dated.

---

[2]The Mayor argued that even if a recall petition is properly certified, a referendum election is first required to consider the question of whether the elected official should be recalled before holding an election to fill the office.

Further, the Mayor argued the process by which the recall petition was circulated was improper pursuant to state law. For example, the form of the petition to which many of the signatures were attached did not set forth any question for a vote of the people, and, more specifically, failed to set forth the full text of the question of whether the Mayor shall be recalled, as required by Tennessee Code Annotated section 2-5-151(b)(2), (e)(1), (f)(2), and (i); and did not contain an accurate description of the recall process as set forth in Section 2-5-151, but instead represented that the Mayor is "automatically recalled" once the required number of signatures is obtained.

Additionally, several versions of the recall petition were circulated by those seeking the Mayor's recall, with each differing from the actual petition originally approved for circulation by the Election Commission. All of the versions of the petition failed to set forth any question, and the unapproved versions omitted spaces where the date each person signed could be identified. Nevertheless, the Election Commission approved signatures contained on these non-approved petitions.

On December 30, 2011, the Election Commission filed an answer in which it claimed that the minimum signature requirements of Tennessee Code Annotated section 2-5-151 were unconstitutional and violated the Class Legislation Clause of the Tennessee Constitution, article XI, section 8.[3] Following a hearing on January 23, 2012, the circuit court denied all pending motions. In denying a motion to dismiss for failure to join other parties, the trial court found that Folkner, one of the appellants, was not a necessary or indispensable party to this action at that time.[4]

On February 9, 2012, the day before the final hearing, the appellants filed a motion to intervene in the action, identifying a single issue as the basis for the intervention: that the minimum signature requirement in Tennessee Code Annotated section 2-5-151 was unconstitutional because the requirement did not apply in all of Tennessee's 95 counties.

---

[3]The provision provides in relevant part:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals, inconsistent with granting to any individual or individuals, rights, privileges, immunitie[s] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

[4]During the hearing, the court asked the parties whether the City should be made a party. The City was later permitted to intervene by order entered on January 30, 2012. The Tennessee Attorney General was brought in as a third-party defendant when the Election Commission contested the constitutionality of Tennessee Code Annotated section 2-5-151.

The circuit court granted the motion to intervene, limited solely to the issue of the constitutionality of the state statutory requirement.

The following day, the circuit court held a final hearing. Just before the start of the hearing, the appellants filed a motion to recuse Judge Hollingsworth from hearing the case. As grounds for the motion, the appellants alleged that campaign contributions made six years earlier by members of the law firm representing the Mayor (Judge Hollingsworth's former employing law firm) created a question as to his impartiality in the matter. In denying the motion, Judge Hollingsworth held as follows:

* Recusal is not practical or necessary if recusal is based merely upon a prior affiliation with a law firm, and that he still considers recusal on a case-by-case basis involving particular lawyers;

* He did not practice with two of the Mayor's lawyers, North and Greenholtz; he was associated with the third lawyer, Hitchcock, for only about a year, did not perform the same type of work as Hitchcock, and seldom crossed paths professionally with Hitchcock.

* Neither North nor Greenholtz contributed to his 2006 judicial campaign; and

* The campaign contributions occurred six years previous.

Following closing arguments, the trial court made the following findings and conclusions, which were incorporated into an order filed on February 14, 2012:

* The constitutional issue raised by the Election Commission and the appellants could be easily resolved by eliding subsection (l) from Tennessee Code Annotated section 2-5-151. As a result, it is not necessary to decide the constitutional issue;

* Solely on the number of valid signatures obtained, the recall petition does not meet the requirements of Tennessee Code Annotated section 2-5-151;

* The 2002 restatement of the City Charter was not an enactment of a "contrary charter provision" as contemplated by Tennessee Code Annotated section 2-5-151(j); thus, the City Charter did not govern the requirement for a minimum number of signatures;

\* Even if the City Charter governed the number of signatures required, state law requires that each signature be dated. *See* Tennessee Code Annotated section 2-5-151(e)(4). Approximately 5,439 signatures did not have a date beside the signature, and as such, the recall petition did not have a sufficient minimum number of dated signatures to satisfy the requirements of the City Charter; and

\* The recall petition itself violated Tennessee Code Annotated section 2-5-151(f)(2) in that it does not contain the question to be presented to voters. The trial court noted that "[t]he clear intent of T.C.A. § 2-5-151 is to impose what has been referred to in this litigation as a '"three step process."' Required steps are: 1. certification of properly executed petitions containing the required number of valid signatures calling for the recall of Mayor Littlefield; 2. a city wide election for the voters to determine whether Mayor Littlefield should be recalled; and 3. if the voters recall the Mayor, an election could be held to select his successor. The process approved by the Election Commission skips the second step of this required process which is the actual recall election. As a result, the process mandated by the Election Commission is illegal and invalid.

Based on these findings, the trial court ordered that the Election Commission "remove the election of a successor for Mayor Littlefield from the ballot of the election scheduled on August 2, 2012." The appellants timely filed their notice of appeal.

## II. ISSUES

The appellants raised the following issues, which we restate as follows:

1. Whether the City Charter or the state statute controls relative to the requisite number of signatures needed for a valid recall of the Mayor.

2. Whether Judge Hollingsworth should have recused himself.

3. Whether the appellants are entitled to rely on the advice given by the Election Commission relative to the need for signature dates on the recall petitions at issue.

4. Whether the Mayor has standing to petition for the injunctive relief requested.

The Election Commission presented the following restated issues:

> 1. Whether the trial court properly held that the referendum vote on August 1, 2002, which restated the entire City Charter, did not effectively "enact" Section 3.18 of the Charter.

> 2. Whether the trial court correctly determined that application of Tennessee Code Annotated section 2-5-151 to city council races was not properly before the trial court.[5]

> 3. Did the trial court err in failing to hold that Tennessee Code Annotated section 2-5-151 cannot survive strict scrutiny or a "rational basis" test for unequal application of recall and referendum votes?

> 4. Whether the trial court properly applied the doctrine of elision to avoid ruling on the constitutionality of Tennessee Code Annotated section 2-5-151?

> 5. Tennessee Code Annotated section 2-5-151 requires the "question" be voted on if the recall is certified. In what form should the "question" be put on the ballot?

> 6. May the Election Commission accept a recall petition under a substantial compliance standard?

The Election Commission also adopted and incorporated the issues raised by the appellants.

## III. STANDARD OF REVIEW

Under 13(d) of the Tennessee Rules of Appellate Procedure, this court reviews the trial court's findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." With respect to the trial court's conclusions of law, and application of law to facts, these conclusions are generally reviewed de novo without a presumption of correctness. *See Jordan v. Knox Cnty.*, 213 S.W.3d 751, 763 (Tenn. 2007); *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Issues of "constitutional interpretation are questions of law, which will be reviewed de novo without

---

[5]The Election Commission asserted that the state statute allows voters from one city council district to recall elected officials from other districts.

any presumption of correctness given to the legal conclusions of the courts below." *See Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

With regard to the recusal issue, the trial court's decision must be affirmed unless it has abused its discretion. *See Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001). A finding of an abuse of discretion is appropriate "only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *See Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

The rules governing statutory construction are as follows:

Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. "Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language."

When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning.

*Jordan*, 213 S.W.3d at 763 (citations omitted). The Court continued:

Construction should not impair, frustrate, or defeat the object of a statute. It is the duty of the Court to place a construction on a statute that will not be prejudicial to the public interest. These rules of construction apply to local ordinances, a county charter and any amendments, or any other legislation by a local government.

*Id.*, at 763 (citations omitted).

## IV.  DISCUSSION

### A.

The controlling state statute at issue, Tennessee Code Annotated section 2-5-151, provides as follows:

(a)  Any governmental entity having a charter provision for a petition for recall, referendum or initiative or any person acting pursuant to such charter provision shall meet the requirements of this section.

(b)  Before a petition may be circulated, at least one (1) registered voter of the city or county shall file with the county election commission:

> (1)  The proper form of the petition; and
> (2) The text of the question posed in the petition.

(c)  The county election commission shall certify whether the petition is in proper form within thirty (30) days after the filing of the documentation required by subsection (b).  The individual or individuals filing the petition shall have fifteen (15) days to cure any defects in the documentation required by subsection (b) by filing revised documentation in proper form with the county election commission. The county election commission shall determine within five (5) days whether or not the revised documentation shall be certified for final approval.

(d)  Petitions shall be signed by at least fifteen (15%) of those registered to vote in the municipality or county.  The disqualification of one (1) or more signatures shall not render a petition invalid, but shall disqualify such signatures from being counted towards the statutory minimum number of signatures required in this section.

(e)  Upon filing, each completed petition shall contain the following:

> (1)  The full text of the question attached to each petition;
>
> (2)  The genuine signature and address of registered voters only, pursuant to the requirements of § 2-1-107;
>
> (3)  The printed name of each signatory; and

(4) The date of the signature.

(f)(1) Completed petitions shall be filed with the election commission within seventy-five (75) days after final certification by the county election commission as required by subsection (c).

(2) In addition, a petition for recall, referendum or initiative shall be filed at least sixty (60) days before a general municipal or county election may be held on the question contained in such petition. The question contained in a petition filed less than sixty (60) days before an upcoming general municipal or county election will be placed on the ballot of the following general municipal or county election.

* * *

(h) The county election commission shall certify whether or not the completed petition meets all applicable requirements within thirty (30) days of filing of the completed petition.

(i) Upon certification by the county election commission pursuant to subsection (h), the election commission shall publish the question contained in the petition pursuant to § 2-12-111.

(j) This section shall control notwithstanding any statutory provision or charter provision of a municipality or county to the contrary; provided, that any contrary charter provision of a municipality or county which is enacted after July 1, 1997, shall control with respect only to the requirements set forth in subsection (d) relating to the statutory minimum number of signatures required in a petition, and to the provisions of (f)(1) relating to the seventy-five-day deadline for filing of a petition after final certification by the county election commission.

(k) This section shall control any petition with signatures filed with the county election commission on or after June 25, 1997.

(l) Notwithstanding any other provision of law to the contrary, the provisions of this section shall not apply to any county having a metropolitan form of government and a population greater than one hundred thousand (100,000), according to the 2000 federal census or any subsequent federal census.

The appellants and the Election Commission argue that Tennessee Code Annotated section 2-5-151 is unconstitutional under the Class Legislation Clause, Tennessee Constitution, article XI, section 8, because the law exempts metropolitan governments from its operation. The Election Commission asserts that the statute decreases the ability of those state citizens outside of Davidson County to recall an elected official. It is further contended that Section 2-5-151 is the only provision in Tennessee law that allows the citizens to force a referendum vote by the voters, and the statute permits voters outside a political district to recall officials in other districts.

In particular, the Election Commission argues that Section 2-5-151 is unconstitutional because it permits officials to be recalled by voters outside a political district. The Election Commission asserts that, in contrast, the City Charter's recall provision protects each city councilman from being recalled by voters from the entire city. It is argued that allowing residents across the City to recall a councilman in one district violates *Brown v. Board of Commissioners*, 722 F.Supp. 380 (E.D. Tenn. 1989).

In response to this argument by the Election Commission, the trial court observed as follows:

> THE COURT: . . . It doesn't make a distinction there that I can see, but what's that got to do with this case because that's not what we're dealing with here? Here we're dealing with a citywide election for an officer, an official who holds a . . . citywide office. And so even if that were true, what's that got to do with what we're dealing with here today?
>
> * * *
>
> THE COURT: It's not dealing with what we're dealing with here and I'm restricted to a decision in this case dealing with these facts.

The circuit court held that the constitutional issue should not be reached because subsection (l) could be elided from the remainder of Tennessee Code Annotated section 2-5-151. It was determined by the court that eliding this subsection to remove the contested provision would not, and could not, affect the remaining provisions of Tennessee Code Annotated section 2-5-151 as applied to this case involving the City's Mayor, and as such, would not affect the requirements for a minimum number of dated signatures supporting a recall petition. Thus, the trial court properly recognized that because the constitutional argument by the appellants and the Election Commission would not result in any relief being granted to them, even if successful, resolution of these issues is not "absolutely necessary for

determination of the case and the rights of the parties." *See, e.g., State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002).

Our Supreme Court has recognized that the doctrine of elision, while not automatic, may be appropriately applied in cases where "a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted. *See In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999) ("We recognize that the legislature's endorsement of elision does not automatically make it applicable to every situation; however, when a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted, then elision of the unconstitutional portion is appropriate.").

It is clear in this case that the legislature would have enacted the remaining sections of Tennessee Code Annotated section 2-5-151 with subsection (l) omitted, as this is what occurred. Tennessee Code Annotated section 2-5-151 did not contain an exemption for counties with metropolitan governments with a certain population in its original enactment. *See* 1997 Tenn. Pub. Acts, ch. 558. Thus, in 1997, the statute applied to all 95 counties. The exemption for metropolitan governments was added eight years later by 2005 Tennessee Public Acts, chapter 428:

> BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:
>
> SECTION 1. Tennessee Code Annotated, Section 2-5-151, is amended by adding the following as a new subsection thereto:
>
> (l) Notwithstanding any other provision of law to the contrary, the provisions of this section shall not apply to any county having a metropolitan form of government and a population greater than one hundred thousand (100,000) according to the 2000 federal census or any subsequent federal census.
>
> SECTION 2. This act shall take effect upon becoming a law, the public welfare requiring it.

*See* 2005 Tenn. Pub. Acts, ch. 428. The original enactment of Tennessee Code Annotated section 2-5-151 also contained its own severability clause. *See* 1997 Tenn. Pub. Acts, ch. 558 ("If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which

can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.").[6]

Consequently, even if an issue exists with the constitutionality of Tennessee Code Annotated section 2-5-151 due to the existence of the later-enacted subsection (l), the remedy would be to elide the offending provision, subsection (l).

As to the issue raised regarding recall matters involving city council members, we do not find such relevant to this situation involving the Mayor. Accordingly, we find such separate recall petitions are not at issue in this matter.

## B.

The appellants, joined by the Election Commission, assert that Judge Hollingsworth should have recused himself from this lawsuit. During oral argument, however, it was stipulated that this issue has been withdrawn. Therefore, we will not consider this issue.

---

[6]Tennessee Code Annotated section 1-3-110 contains a general severability clause for the Tennessee Code, and this provision specifically provides that the unconstitutionality of one provision of a statute should not affect other provisions:

It is hereby declared that the sections, clauses, sentences and parts of the Tennessee Code are severable, are not matters of mutual essential inducement, and any of them shall be exscinded if the code would otherwise be unconstitutional or ineffective. If any one (1) or more sections, clauses, sentences or parts shall for any reason be questioned in any court, and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, and the inapplicability or invalidity of any section, clause, sentence or part in any one (1) or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance.

*See* Tenn. Code Ann. § 1-3-110.

**C.**

The appellants and the Election Commission assert that the City Charter was effectively "enacted after July 1, 1997" per City Ordinance No. 11272, which provided it was to "[a]mend and restate the Charter of the City of Chattanooga in its entirety. . . ."

In 1990, the City Charter was substantively modified by an agreed order entered by the United States District Court in a Voting Rights Act case, *Brown v. Board of Commissioners*, 722 F.Supp 380 (E.D. Tenn. 1989). Among other changes, the agreed order replaced the former Commission form of government, in which Commissioners were elected City-wide, with a Mayor-Council form of government, in which members of the Council were elected by district. Although this agreed order included provisions necessary to implement a new form of government, it did not comprehensively rewrite the then-existing City Charter.

Subsequently, by Ordinance No. 9435, the City Council proposed a change to the recall provisions of the City Charter to conform those provisions to the new Mayor-Council form of government. The Ordinance, ratified by the voters in November 1990, was the last modification to the material provisions of Section 3.18 of the City Charter:

> In the case of an official elected at large, a petition signed by qualified voters equal in number to at least fifty per centum (50%) of the entire vote for all candidates for the office of mayor cast at the last preceding general municipal election, demanding an election of a successor of the person sought to be removed shall be filed with the commissioners of election of Hamilton County . . . .

In 1997, the legislature adopted Public Chapter 558, now codified at Tennessee Code Annotated section 2-5-151, to provide for uniform requirements for any petition for recall, referendum, or initiative. Section 2-5-151(a) provides that "[a]ny governmental entity having a charter provision for a petition for recall, referendum or initiative or any person acting pursuant to such charter provision, shall meet the requirements of this section." The statute provides in section 2-5-151(j) that "[t]his section shall control notwithstanding any statutory provision or charter provision of a municipality or county to the contrary."

Under Tennessee Code Annotated section 2-5-151(d), recall petitions must be signed by "at least fifteen percent (15%) of those registered to vote in the municipality or county." However, a municipality may adopt a different minimum number of signatures, if, and only if, a "contrary charter provision of a municipality or county . . . is enacted after July 1, 1997." *See* Tenn. Code Ann. § 2-5-151(j). Accordingly, unless a city enacts a charter provision,

after July 1, 1997, that provides for a different minimum signature requirement needed to support a recall petition, Tennessee Code Annotated section 2-5-151 governs and establishes the basic requirements for petitions in all cases.

The legislative history of Tennessee Code Annotated section 2-5-151 reveals the legislature's intent to require municipalities to "amend their charter" after July 1, 1997, if they desired to adopt requirements different than those imposed by Section 2-5-151. As noted by the Attorney General, the only relevant reference to the statutory minimum signature requirements was the following explanation offered by Senator Rochelle, the Senate Sponsor:

> Now what these two amendments relate to is the issue of where you have differing provisions out there. It is how you handle when a municipal charter provides for recall referendum or initiative. That is the only time it comes into play is municipal charters. This sets up a uniform way of doing it in amendment one. Amendment one to one was requested by Senator Fowler and it is a late filed amendment. It says that if a municipality wants to do it a different way, they can amend their charter after July 1, 1997 and that would control. **So we start out uniform, if any city is dissatisfied with it, they'd be able to change it.**

*See* Tenn. Op. Atty. Gen. No. 97-149 (Oct. 23, 1997) (emphasis added). Thus, to override the uniform state standard for minimum signatures on a recall petition, municipalities must "amend their charter" after July 1, 1997 to adopt a different minimum.

In 2002, changes were made to the City Charter primarily to remove obsolete references to the old Commission form of government. The City Council, in Ordinance No. 11272, implemented the changes by amending and restating the entire City Charter, rather than reciting each individual amendment. After passing City Council, the Ordinance was incorporated into a Notice of Election. Pursuant to that Notice, the following question was submitted to the voters of the City at the general county election held on August 1, 2002:

> Shall Ordinance No. 11272 to amend and restate the Charter of the City of Chattanooga, Tennessee be approved, which amendment, among other changes: (1) conforms the pre-existing city charter with the court order creating the mayor/council form of government; (2) repeals former charter provisions conflicting with the court order; (3) substitutes the word "mayor" for "board of commissioners" or "commissioner" wherever the same refers to the administrative powers and functions of city government; (4) substitutes the

words "city council" wherever the same refers to the board of commissioners or commission in its legislative or quasi-judicial capacities.

The voters approved Ordinance No. 11272 by a majority vote.

The circuit court held that the 2002 City Charter restatement did not amount to an "enactment" of a "contrary charter provision" under Tennessee Code Annotated section 2-5-151(j), finding that the Ordinance only removed obsolete references to a prior form of government and otherwise continued the prior recall procedures "in full force and effect."

We disagree. We find that the 2002 City Charter restatement was sufficient to "enact" a "contrary charter provision" pursuant to Tennessee Code Annotated section 2-5-151(j) (allowing a contrary charter provision of a municipality with respect *only* to the statutory minimum number of signatures required in a petition (subsection (d))) (emphasis added). Thus, we conclude the minimum signature requirement contained in Section 3.18 of the City Charter governs the minimum number of signatures required for a recall petition. The parties have stipulated that the amount of valid petition signatures under the provisions of the City Charter would be 8,957.

Tennessee Code Annotated section 2-5-151 otherwise controls. As noted in subsection (a), "[a]ny governmental entity having a charter provision for a petition for recall ... *shall* meet the requirements of this section." (Emphasis added). Accordingly, Tennessee Code Annotated section 2-5-151(e)(4) requires that all signatures affixed to a recall petition be dated. Therefore, all 8,957 signatures must bear dates.

## D.

The appellants argue they "relied" upon "bad advice" from the Election Commission regarding the number of dated signatures needed to properly and lawfully certify a recall petition. They ask that the recall process be allowed to proceed on the basis of estoppel. As to the appellants, this issue is well outside of the scope of the limited intervention they were awarded. Since this issue was adopted by the Election Commission, it is properly before us. We have concluded, however, that the issue must be resolved against the Commission. We reject the proposition that a governmental entity can be forced into taking illegal action based upon the principles of estoppel.

**E.**

The appellants and the Election Commission argue that the Mayor does not have standing to challenge an attempt to seek his recall. As the Supreme Court has recognized,

> [t]o establish standing, a plaintiff must show three elements: (1) a distinct and palpable injury, as opposed to a conjectural or hypothetical injury; (2) a causal connection between the claimed injury and the challenged conduct; and (3) the alleged injury is capable of being redressed by a favorable decision of the courts.

*See Lynch v. City of Jellico*, 205 S.W.3d 384, 395 (Tenn. 2006) (citations omitted).

As the elected official at whom the recall efforts were directed, the Mayor certainly had an interest that was distinct from the voters as a whole. Not only would he be subject to an election in violation of applicable state law, but he could be ousted from his position as Mayor in the process. Therefore, more so than any other party, the Mayor has shown that he would suffer a distinct and palpable injury that is different from the public at large. *See City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001). Also, the recall procedures adopted by the Election Commission would have affected those interests specifically. Finally, these interests could have been, and in fact were, redressed by a favorable decision of this court. Thus, all three elements were met in this case to show that the Mayor had standing to bring these issues before the court. Furthermore, no authority has been cited suggesting that a duly elected official lacks standing to challenge the legality of procedures used to institute a recall election. We find this issue has no merit.

**F.**

The Election Commission presents the issue regarding the "three step" versus "two step" recall process, arguing that the two step process was approved by the Tennessee Supreme Court in *State ex rel. Brown v. Howell Election Commissioners*, 183 S.W. 517 (Tenn. 1916). It is asserted the two step process saves costs by requiring only one election.

The circuit court held that Tennessee Code Annotated section 2-5-151 properly set forth a three step process. The court concluded that in the instant case, the certification of the recall petition was illegal, in part, because the recall petition failed to contain a question to be proposed to voters, as required by subsections (b)(2), (e)(1), (f)(2) and (i). The Election Commission set a contested election without first presenting the question of the recall to the voters, and the recall petition itself puts forth no question for its signatories to consider.

Tennessee Code Annotated section 2-5-151 establishes a three step process for recall elections. As noted by the trial court, first, "[w]e have the certification of the petitions" with a question as to whether the incumbent office holder should be removed. Second, "[w]e have a referendum" whether to remove the incumbent office holder. Third, "if that official is recalled by the voters, then we have an election for the replacement of that position."

The *Brown* case does not support the Election Commission's argument that the Supreme Court has "validated" a process for recall elections where the "question" of recall and the selection of a successor are combined into one proceeding. The argument disregards the fact that the legislature passed a law more than 80 years **after** the *Brown* decision to establish a uniform procedure by which recall elections are conducted. (Emphasis added). There is no merit to this issue.

## G.

The Election Commission asserts that the Supreme Court has held that "only a substantial compliance, rather than a strictly literal compliance, with the election laws is required." *Lanier v. Revell*, 605 S.W.2d 821, 822 (Tenn. 1980). Accordingly, the Election Commission argues that the court should not find the recall invalid for noncompliance with the "requirement of the date for signatures obtained."

Despite outdated case law to the contrary, the legislature has not allowed for "substantial compliance" regarding the matter before us. Subsection (h) of Tennessee Code Annotated section 2-5-151 provides that "[t]he county election commission *shall* certify whether or not the completed petition meets *all applicable requirements* within thirty days of filing of the completed petition." (Emphasis added). The legislature did not give authority to the Election Commission to certify partial compliance or to pick and choose which of the applicable requirements were sufficient for compliance. This issue is meritless.

## V. CONCLUSION

We affirm the findings and conclusions of the trial court that: (1) it was not necessary to decide the issue of the constitutionality of Tennessee Code Annotated section 2-5-151; (2) the "three step" recall process is required pursuant to Tennessee Code Annotated section 2-5-151; (3) Tennessee Code Annotated section 2-5-151(e)(4) requires dated signatures and the recall petition did not have a sufficient minimum number of dated signatures to satisfy the requirements of the city charter; (4) the Mayor has standing; and (5) the illegal recall process cannot be allowed to proceed on the bases of estoppel and/or substantial compliance. We

reverse the trial court as to its finding (1) that the referendum vote of August 1, 2002, did not effectively "enact" Section 3.18 of the City Charter, and (2) that Tennessee Code Annotated section 2-5-151(d) governs the requisite number of signatures required to support a recall petition. We find that the City Charter prevails as to the necessary number of signatures to support the recall effort. This cause is remanded, with the costs of this appeal assessed evenly to the appellants, Charles F. Wysong, Jr., James Folkner, and Darrell Silvey, and the appellees, Ron Littlefield and the Hamilton County Election Commission.

_____
JOHN W. McCLARTY, JUDGE